**RE—95—58**                                            1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Socorro Alberty Marrero<br>      Recurrente<br><br>      V.<br><br>Lcdo. Marcos Rodríguez Emma, en su capacidad personal y como Presidente del Banco Gubernamental de Fomento para Puerto Rico y otros<br>      Recurridos | Solicitud de Revisión<br><br>99 TSPR 166 |

Número del Caso: RE-1995-58

Abogado de la Parte Recurrente:    Lcdo. Guillermo Mojica Maldonado

Abogado de la Parte Recurrida:     Lcdo. Rafael J. Vázquez González

Tribunal de Primera Instancia, Sala Superior de San Juan

Juez del Tribunal de Primera Instancia: Hon. Gilberto Gierbolini

Fecha: 11/1/1999

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

En el Tribunal supremo de puerto rico


Socorro Alberty Marrero

    **Demandante-recurrente**

      **v.**                                    **RE-95-58**

**Lcdo. Marcos Rodríguez Emma,**
**en su capacidad personal**
**y como Presidente del Banco**
**Gubernamental de Fomento**
**para Puerto Rico y otros**

    **Demandados-recurridos**


**OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**


San Juan, Puerto Rico, a 1ro. de noviembre de 1999

**El presente recurso fue resuelto a nivel de instancia a través de una solicitud de "desestimación y/o sentencia sumaria". Acorde con nuestro acervo jurídico, en casos dilucidados por la vía desestimatoria, tomamos como ciertas las alegaciones de la demandante y, asimismo, hacemos todas las inferencias permisibles que sean favorables a ésta. C.f. <u>Ramos</u> v. <u>Marrero</u>, 116 D.P.R. 357, 369 (1985); <u>Unisys</u> v. <u>Ramallo</u>, 128 D.P.R. 842 (1991); <u>Romero</u> v. <u>E.L.A.</u>, 127 D.P.R. 724 (1991). Obviamente, al así proceder no prejuzgamos los hechos ante nos.**

I

Socorro Alberty Marrero se desempeñaba como Secretaria III, en un puesto de carrera, en el Departamento de la Vivienda ("Vivienda"). El 16 de febrero de 1985, pasó mediante "traslado" al Banco Gubernamental para el Fomento de Puerto Rico ("Fomento"). Según alega Alberty Marrero, su traslado fue solicitado por quien en ese entonces fungía como presidente de Fomento, el Dr. José R. Oyola, y autorizado por el Sr. Irving Jiménez Narváez, Director de Personal de Vivienda. Al "trasladarse" a Fomento, Alberty Marrero aceptó un puesto de confianza.

Casi ocho años más tarde, durante el mes de enero de 1993[1], se requirió la renuncia a Alberty Marrero. Ésta, por ocupar un puesto de confianza, puso el mismo a disposición del nuevo presidente de Fomento, Lcdo. Marcos Rodríguez Emma. Posteriormente, Alberty Marrero recibió una carta de despido firmada por el Lcdo. Rodríguez Emma, en la que, alegadamente, no se le reconoció derecho a reinstalación en su antiguo puesto de carrera.

El día posterior a su despido, Alberty Marrero alegadamente recibió varias llamadas de la co-demandada, Sra. Zayda De Chouden's y del Sr. Chaves, empleados de la oficina de recursos humanos de Fomento, indicándole que pasara por esa oficina el próximo lunes pues su despido, alegadamente, había sido un error. Así lo hizo Alberty Marrero. Mientras esperaba en Fomento por la Directora de Personal, Sra. Mercedes Gauthier, el Lcdo. Rodríguez Emma supuestamente le indicó "que perdonara lo de su carta de despido, que había sido un error".

---

[1] Siendo éste un caso en que se alega discrimen político, es propio reseñar que el 3 de noviembre de 1992, se celebraron en Puerto Rico las elecciones generales. En éstas, hubo un cambio de administración y, eventualmente, hubo un cambio de mando en Fomento.

Luego de que Alberty Marrero estuviera acudiendo a sus labores en Fomento por dos semanas, la Sra. Gauthier le informó que la iban a reponer en su empleo, con la condición de que se sometiera a un examen de ingreso. Posteriormente, Alberty Marrero fue "reinstalada" en la Corporación para el Cómputo de Arbitraje ocupando el puesto de Secretaria del Director Ejecutivo. Esto, sin que se le hubiese requerido tomar examen de ingreso.

Durante los meses de junio y julio de 1993, Fomento otorgó aumento de sueldo a sus empleados gerenciales, pero no lo hizo para con Alberty Marrero. En agosto de 1993, Alberty Marrero fue trasladada a prestar servicios en la Oficina del Fondo para el Desarrollo, laborando para los señores Dominick Torres, Juan Robles y Luis Cora.

Durante septiembre de 1993, Alberty Marrero recibió una llamada de la Sra. De Chouden's, quien le solicitó que se sometiera a un examen para el puesto de Oficinista Dactilógrafo y que, de aprobarlo, se le crearía un puesto en Fomento. Alberty Marrero tomó el examen y lo aprobó[2]. Aproximadamente siete meses más tarde, en abril de 1994, Alberty Marrero recibió una llamada de la Sra. Esther Martínez, empleada de la oficina de Recursos Humanos de Fomento. Ésta indicó a Alberty Marrero que debía aceptar un puesto de recepcionista en la "Puerto Rico Housing" ––subsidiria de Fomento–– y renunciar al puesto que ocupaba. En ese mismo mes, Alberty Marrero cursó una misiva al Presidente de Fomento, Lcdo. Rodríguez Emma, describiendo los problemas que confrontaba con su puesto.

A fines del mes de junio de 1994, De Chouden's alegadamente le expresó a Alberty Marrero que "para arreglar su problema" tenía que aceptar un puesto de Oficinista Dactilógrafo en el

---

[2] Alegación número 19 de la demanda.

Archivo Inactivo de Fomento[3], lo cual conllevaría una reducción en su salario. Alberty Marrero solicitó a De Chouden's que hiciera una notificación por escrito del ofrecimiento. Esto, alegadamente, nunca ocurrió.

El 30 de junio de 1994, en horas de la tarde, De Chouden's, junto al Sr. Chaves ——empleado de la oficina de Recursos Humanos—— entregaron a Alberty Marrero una carta de despido firmada por el Lcdo. Rodríguez Emma. La carta de despido aduce como fundamento que el "traslado" de Alberty Marrero, de Vivienda a Fomento, había sido "nulo" y que ésta se había desvinculado de forma permanente de su puesto de carrera el día en que se "trasladó".[4]

Así las cosas, el 29 de septiembre de 1994, Alberty Marrero presentó demanda contra el Lcdo. Rodríguez Emma, De Chouden's, y Fomento. Planteó que su remoción fue ilegal, pues los demandados habían conspirado entre sí para despedir a la demandante por el solo hecho de su afiliación política; que aquéllos se habían negado a reconocer el derecho de Alberty Marrero a ser reinstalada en un puesto igual o similar al último que ocupó antes de ingresar al puesto de confianza. Asimismo, levantó violaciones al debido proceso de ley y sus derechos constitucionales.

Luego de la radicación de una denominada solicitud de "desestimación y/o sentencia sumaria", el extinto Tribunal Superior, Sala de San Juan, dictó sentencia desestimatoria, el 30 de diciembre de 1994.[5]

---

[3] Localizado en el antiguo edificio de la Cervecería Corona en Santurce.

[4] Según indica Alberty Marrero, varios días antes de su "segundo" despido, participó, fuera de horas laborables, en una reunión de empleados públicos efectuada en el Comité Central del Partido Popular Democrático.

[5] La sentencia fue notificada a las partes el 10 de enero de 1995. Ese mismo día fue archivada en autos copia de la notificación de la sentencia.

Inconforme, Alberty Marrero presentó recurso de revisión ante este Tribunal. La recurrente imputa la comisión de dos errores: primero, cuestiona la constitucionalidad del impedimento que establece la Ley de Personal[6] en torno al traslado de empleados de agencias cubiertas por la Ley a corporaciones públicas; segundo, si procedía decretar la desestimación de su demanda, sin la celebración de una vista en su fondo, no obstante las alegaciones sobre discrimen por afiliación política contenidas en la misma.

Este Tribunal le concedió un término de treinta días a los demandados recurridos para que mostrasen causa por la cual no debía revocarse la sentencia dictada y ordenar la continuación de los procedimientos ante el tribunal de primera instancia; esto, en virtud de los fundamentos en que se apoya el segundo señalamiento de error de la recurrente.

En cumplimiento de dicha Resolución, comparecieron los demandados-recurridos. En su comparecencia, indican que debe confirmarse la sentencia debido a que este Tribunal sólo emitió una orden de mostrar causa en cuanto al segundo señalamiento de error, y no así con respecto al primero. Argumentan que nuestro rechazo al primer señalamiento equivale a que acatamos la nulidez del traslado de la peticionaria. Añaden que al ser nulo el traslado no cabe hablar de un acto intencional constitutivo de discrimen político. En fin, según Fomento, ante la falta de discrimen político y la existencia de justa causa --traslado nulo--, este Tribunal debería denegar el recurso y confirmar la sentencia recurrida. Veamos.

## II

"Separar, distinguir, diferenciar una cosa de otra, tratar con inferioridad a personas o colectividades por motivos

---

[6] Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1334 (4).

raciales, religiosos, políticos, etc."[7]: este es el significado que la sociedad le atribuye a la acción de discriminar. Por ello, es la sociedad quien, de ordinario, establece los parámetros aceptados para discriminar. Las normas sociales establecen cuándo y sobre cuáles asuntos los juicios valorativos de los individuos son inaceptables, impartiéndole así atributos negativos a la discriminación. <u>No empece a ello, no todo lo que socialmente se considera como discrimen tiene un resultado análogo en el campo del Derecho.</u>

Nuestra Asamblea Legislativa, a través de la legislación protectora del trabajo, ha proscrito gran parte del discrimen en Puerto Rico en el área de empleo. Así, ha ordenado un remedio particular para el discrimen allí contemplado. Ciertamente, en Puerto Rico existe un cuidadoso andamiaje de legislación protectora del trabajo.[8] El discrimen en el empleo, por ideas o afiliación política, es uno de los que se ha intentado erradicar en Puerto Rico.

De entrada, debemos reconocer que el discrimen por afiliación política, en nuestra jurisdicción, es una plaga que, principalmente, hace su agosto en el empleo público. Esto, debido al hecho indiscutible de que, no empece la tendencia privatizadora, el patrono con mayor número de empleados en Puerto Rico es el propio Estado Libre Asociado. Por supuesto, en tal cómputo se encuentran las corporaciones públicas.

De forma consistente, este Tribunal ha expresado que los empleados públicos gozan de protección en sus cargos contra el discrimen por ideas políticas. Así, hace más de viente años, en

---

[7] Diccionario de la Lengua Española, Espasa Calpe S.A., Madrid, 1992, pág. 536; Guillermo Cabanellas, Diccionario Enciclopédico de Derecho Usual, Editorial Heliasta, Edición 23, Tomo III, pág. 271.
[8] Véase R. Delgado Zayas, <u>Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño</u>, San Juan, Puerto Rico, 1989; A. Acevedo Colom,

Báez Cancel v. Alcalde Mun. de Guaynabo, 100 D.P.R. 982, 987

(1972), indicamos que:

>    "La Sec. 1 del Art. II de la Constitución del
>    Estado Libre Asociado de Puerto Rico prescribe en
>    forma clara que 'no podrá establecerse discrimen
>    alguno por motivo de raza, color, ... ideas políticas
>    o religiosas'. La proscripción del discrimen es clara
>    y terminante. Su texto no permite distinción alguna.
>    Quiere decir lo que dice. Que el Estado en ninguna de
>    sus múltiples funciones o servicios puede discriminar
>    contra un ciudadano por el mero hecho de ser éste
>    negro, ateo o por sus ideas políticas. Cualquier otra
>    interpretación enervaría su eficacia. Fortalecerla y
>    no enervarla es nuestro deber, como los principales
>    custodios de la Constitución." (Énfasis suplido.)

Con ese mandato constitucional como norte, hemos

establecido como principio que no cabe el discrimen político ni

siquiera contra empleados de confianza, que por la naturaleza de

sus puestos, no poseen una expectativa de permanencia en ellos,

pues están sujetos a la libre selección y remoción por sus

superiores. McCrillis v. Autoridad Navieras de P.R., 123 D.P.R.

113 (1989); Franco v. Mun. de Cidra, 113 D.P.R. 260 (1982);

Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982).

Conocido es que una de las leyes que proscribe el discrimen

en Puerto Rico lo es la Ley Núm. 100 de 30 de junio de 1959[9], 29

L.P.R.A. sec. 146 et seq..[10] Precisamente, ésta fue la ley que

---

Legislación Protectora del Trabajo Comentada, 5ta Ed., Ramallo
Printing Bros., San Juan, Puerto Rico, 1997.

[9] Ésta dispone que incurrirá en responsabilidad civil

>    "[t]odo patrono que despida, suspenda o discrimine
>    contra un empleado suyo en relación a su sueldo,
>    salario, jornal o compensación, términos, categorías,
>    condiciones o privilegios de su trabajo, o que deje de
>    emplear o rehuse emplear o reemplear a una persona, o
>    limite o clasifique sus empleados en cualquier forma
>    que tienda a privar a una persona de oportunidades de
>    empleo o que afecten su status como empleado, por
>    razón de edad, según ésta se define más adelante,
>    raza, color, sexo, origen social o nacional, condición
>    social, afiliación política, o ideas políticas o
>    religiosas del empleado o solicitante de empleo".
>    (Subrayado nuestro).

[10] Sobre el particular, véase Huertas Alicea v. Compañía de
Fomento Recreativo, Opinión y Sentencia de 4 de noviembre de
1998.

invocó Alberty Marrero al instar su pleito por alegado discrimen por afiliación o ideas políticas.

El Artículo 3 de la Ley Núm. 100 establece una presunción rebatible de que el despido es discriminatorio salvo que se demuestre que hubo justa causa.[11] La presunción se activa al demostrarse que el patrono no tenía justa causa para tomar la acción en controversia.[12]

Asimismo, a través de nuestras decisiones, hemos expresado que, como la Ley Núm. 100 no define "justa causa", se debe de utilizar la definición provista en la Ley de Despido Injustificado[13]. Sin embargo, por no ser absolutamente pertinente a la controversia ante nos, no discutiremos este asunto.

De ordinario, los casos de discrimen político comienzan con la radicación de una acción en la que el demandante alega: que fue despedido de su empleo, que no hubo justa causa para el despido y que el mismo se debió a discrimen por razones políticas. Llegado el momento en que se activa la presunción de discrimen que establece la ley, el demandado tiene varias opciones o alternativas. Como es sabido, desde el ámbito de derecho probatorio, el demandado puede atacar o destruir la presunción en tres formas distintas, a saber: derrotar el hecho básico, esto es, la alegación de que no hubo justa causa; destruir el hecho presumido, esto es, la alegación de que el despido se debió a discrimen político; y, la última opción, atacar o destruir ambos hechos, el básico y el presumido. Lo ideal, naturalmente, es que intente destruir ambos. Así,

---

[11] 29 L.P.R.A. sec. 148.
[12] Ciertamente, en la demanda hay que alegar que había una relación obrero-patronal (o de aspirante a empleo), y que se tomó una acción adversa en contra del empleado o del aspirante y, por último, que el demandante cae dentro del grupo que protege la legislación en cuestión.
[13] Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185(a) y ss.

incluso, evitará que el tribunal, en su día, pueda determinar que violó las disposiciones de la Ley 80[14].

En ese sentido, no debe olvidarse lo resuelto en _Ibañez Benítez_ v. _Molinos de P.R. Inc._, 114 D.P.R. 42, 51-52 (1983). Específicamente, expresamos allí que

> "[e]n nuestra jurisdicción no es necesario que el patrono afirmativamente "articule" una explicación razonable para el despido, aunque en la práctica ésta sería la forma más certera y conveniente de destruir la presunción. Basta con que pruebe, aun mediante evidencia circunstancial, que la razón para el despido no fue discriminatoria para que la presunción quede destruida." _Ibáñez Benítez_ v. _Molinos de P.R. Inc._, _ante_, pág. 53; _Rodríguez Meléndez_ v. _Sup. Amigo Inc._, 126 D.P.R. 117 (1990).

_Ahora bien, ¿qué sucede cuando, como en el presente caso, existe una razón, o justa causa, jurídica para el despido decretado?_ Como recordaremos, la parte demandada en el presente caso sostiene que en virtud de las disposiciones de la antes citada Ley de Personal[15] --esto es, por imperativo o mandato de ley-- el traslado de que fue objeto la demandante, de Vivienda a Fomento, es uno nulo; razón por la cual Fomento venía en la obligación de cesantear a la demandante, lo que implica que hubo justa causa en el despido decretado y, por ende, ha quedado destruida la presunción de discrimen que establece la antes citada Ley 100.

Asumiendo, a los fines de la argumentación, que la posición a los efectos de que el traslado de la demandante de Vivienda a

---

[14] Debe mantenerse presente que, en casos de despidos por alegado discrimen en el servicio público, el demandado tiene una cuarta opción o defensa: aceptar que discriminó políticamente pero que fue porque, para el puesto en cuestión, es esencial la identidad en afiliación política entre el empleado y la autoridad nominadora para el cabal desempeño de las funciones del cargo. _Rodríguez_ v. _Padilla_, _ante_, pág. 500; _Segarra Feliciano_ v. _Municipio de Peñuelas_, Opinión y Sentencia de 16 de junio de 1998.

[15] Ley Núm. 5 del 14 de octubre de 1975.

Fomento fuera uno nulo[16], ¿significa ello que la demandante, a la luz de sus alegaciones, no tiene causa de acción alguna y que, en consecuencia, procede desestimar la demanda por ella radicada? Contestamos la referida interrogante en la negativa.

Somos del criterio que, aun cuando *prima facie* exista una razón legítima para el despido, al demandante se le debe brindar la oportunidad de poder demostrar, en juicio plenario, que la verdadera y real razón detrás del despido decretado lo fue el discrimen por razones políticas; esto es, que la razón alegada por el patrono, *prima facie* válida, para decretar el despido realmente fue un pretexto utilizado por éste.[17]

Conforme las alegaciones de la demanda, la demandante, no obstante ser originalmente informada que sería despedida del puesto de confianza que ocupaba, permaneció como empleada de Fomento --bajo la nueva administración-- por un período aproximado de año y medio, período lleno de inestabilidades. Acorde, además, con dichas alegaciones, ella finalmente fue despedida de Fomento luego de participar días antes en una reunión de empleados públicos en el Comité Central del Partido Popular. Ello levanta, cuando menos, dudas respecto a la legitimidad de la razón alegada para el despido; esto es, la nulidad del traslado de Vivienda a Fomento.

Por otro lado, e independientemente de la nulidad de dicho traslado, la demandante Alberty Marrero ocupaba un puesto de confianza en Fomento. Conforme nuestra jurisprudencia, a dichos empleados también les cobija la protección constitucional de la Sección 1 del Artículo II de la Constitución del Estado Libre

---

[16] Hace unos años --en Autoridad de los Puertos v. Municipio de San Juan, 123 D.P.R. 508 (1989)-- este Tribunal resolvió, vía dicta, que un traslado como el efectuado en el caso de autos es nulo.
[17] Véase: Alvarez Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st. Cir. 1998).

Asociado de Puerto Rico. <u>McCrillis</u> v. <u>Autoridad de Navieras de Puerto Rico</u>, <u>ante</u>; <u>Ramos</u> v. <u>Secretario de Comercio</u>, <u>ante</u>.

En fin, somos del criterio que la demandante Alberty Marrero debe tener su "día en corte"; ello con el propósito de poder demostrar, si es que así puede y por preponderancia de la prueba, que la razón aducida por Fomento para despedirla de su empleo --la nulidad del traslado de Vivienda a Fomento-- <u>no</u> es otra cosa que un pretexto y que la verdadera razón detrás del mismo lo es el crudo discrimen político.[18]


                                II

Por los fundamentos que anteceden, procede expedir el auto de revisión y dictar Sentencia revocatoria de la emitida por el antiguo Tribunal Superior, Sala de San Juan, desestimando la demanda radicada por Socorro Alberty Marrero; devolviéndose el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                      FRANCISCO REBOLLO LÓPEZ
                           Juez Asociado

---

[18] En <u>Price Waterhouse</u>, 490 U.S. 228 (1989), el Supremo Federal, en una decisión pluralista, resolvió que un patrono podía salvar su responsabilidad si demostraba que, independiente de la existencia de un motivo ilícito en el despido, el mismo siempre se hubiera llevado a cabo debido a la existencia de otros motivos lícitos. Esta doctrina se conoció como la doctrina de "dualidad de motivos".

En el 1991, reaccionando a la decisión emitida en <u>Price Waterhouse</u>, <u>ante</u>, el Congreso expresamente dispuso, al <u>enmendar</u> la Ley Federal de Derechos Civiles, que:

> "...an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, <u>even though other factors also motivated the practice</u>." (Énfasis suplido). 42 U.S.C. 2000e-2(m); <u>Falco</u> v. <u>Office Electronics, Inc.</u>, 1999 WL 156350 (N.D. Ill).

En el Tribunal supremo de puerto rico

Socorro Alberty Marrero

    **Demandante-recurrente**

      **v.**                                    **RE-95-58**

**Lcdo. Marcos Rodríguez Emma,
en su capacidad personal
y como Presidente del Banco
Gubernamental de Fomento
para Puerto Rico y otros**

    **Demandados-recurridos**

SENTENCIA

San Juan, Puerto Rico, a $1^{ro.}$ de noviembre de 1999

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto y se dicta Sentencia revocatoria de la emitida por el antiguo Tribunal Superior, Sala de San Juan; devolviéndose el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió Opinión Concurrente. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Corrada del Río inhibido.

Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Socorro Alberty Marrero

    Demandante-recurrente

        v.

                             RE-95-58     Revisión

Lcdo. Marcos Rodríguez Emma,
en su capacidad personal y
como Presidente del Banco
Gubernamental de Fomento
para Puerto Rico y otros

    Demandados-recurridos

    Opinión Concurrente del Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 1 de noviembre de 1999

**Por imperativo constitucional del debido proceso de ley, para activar una presunción no bastan alegaciones. Su validez depende inexorablemente de la existencia de unos hechos básicos debidamente probados y su relación racional con el hecho presumido.**

Nuevamente, tal y como advertimos en <u>Sandoval</u> v. <u>Caribe Hilton</u>, res. en 25 de octubre de 1999, 99 TSPR 161, la mayoría le atribuye a la jurisprudencia que interpreta la presunción de discrimen de la Ley 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 131 <u>et seq.</u>, un alcance, no sólo inexistente sino inconstitucional, cuyo efecto es eximir al reclamante de probar unos hechos básicos, previo a

tener a su favor la presunción.

Esto, en detrimento del debido proceso de ley de los demandados, quienes ante una presunción fuerte, se les impone la carga, no sólo de producir, sino de persuadir al juzgador de la inexistencia del discrimen.

## I

Las presunciones no constituyen evidencia propiamente. Son "reglas de inferencia relativas a las inferencias que el juzgador puede o debe hacer de la evidencia admitida". Chiesa, _Práctica Procesal Puertorriqueña, Evidencia_, pág. 39. La Regla 13(A) de Evidencia las define como "una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. A ese hecho o grupo de hechos previamente establecidos, se le denomina hecho básico; al hecho derivado mediante la presunción se le denomina hecho presumido".

El peso de la prueba en cuanto a los hechos básicos, corresponde a quien advendría favorecido por la presunción, y su estándar, aquella certeza o convicción moral del juzgador en un ánimo no prevenido. Regla 10(c). Emmanueli, _Prontuario de Derecho Probatorio Puertorriqueño_, 1ra. ed., 1994, pág. 127. Si el juzgador no tiene la certeza o convicción moral de que el reclamante estableció los hechos básicos, no puede asumir la existencia del hecho presumido. Por el contrario, si en conciencia cree que lo logró, tiene que asumirla. Una vez activada la presunción, el peso de producir la evidencia y persuadir se transfiere al demandado, teniendo que demostrar que la existencia del hecho presumido –discrimen–, es menos probable que su inexistencia. De ser presunción de efecto fuerte, ante la duda, el juzgador tiene que dar por probado el hecho presumido. 34 L.P.R.A. IV R. 14; _Belk Arce_ v. _Martínez_, res. en 30 de junio de 1998, 98 TSPR 109; _López Vicil_ v. _ITT Intermedia, Inc._, res. en 4 de abril de 1997, 142 D.P.R. ___ (1997); _Ibáñez_ v. _Molinos de P.R., Inc._, 114 D.P.R. 42 (1983). Si bien este efecto fuerte de la presunción no plantea en nuestra jurisdicción mayores problemas constitucionales –por aplicar a casos civiles ante tribunal de derecho–, "siempre queda la probabilidad de que una presunción, aún en casos civiles, viole el debido proceso de ley por ausencia de conexión racional entre el hecho básico y el hecho presumido." Chiesa, _ob. cit._, págs. 44-45. La violación sería aún mayor, si en lugar de no existir tal conexión, se pretende basar en alegaciones y no se establecen los hechos básicos que dan vida a la presunción.

## II

Es insostenible, hermenéutica y constitucionalmente, la interpretación y alcance que da la mayoría a la jurisprudencia que ha examinado esta presunción. Primero, al examinar el debate legislativo encontramos que al explicar la presunción contenida en la Ley Núm. 100, el Legislador, lejos de eximir al reclamante de probar los hechos básicos, indicó que dicha presunción operaba para eximir a un patrono de responder por actos discriminatorios, aún cuando el empleado estableciera los hechos básicos, si hubo justa causa para el despido. Es decir, puede el empleado caer bajo el grupo protegido por la ley y haber sido despedido, y no activarse la presunción de discrimen, siempre que haya justa causa para el despido. _Diario de Sesiones_, 30 de marzo de 1959, pág. 686. Segundo, los casos aludidos fueron adjudicados en sus méritos. Nunca se planteó, menos eximió, a los reclamantes del peso de prueba, es decir, de cumplir con la obligación de establecer unos hechos básicos que dieran vida a la presunción. Sólo atendimos el efecto que tiene la presunción una vez activada debidamente. _Belk Arce_ v. _Martínez_, _supra_; _López Vicil_ v. _ITT Intermedia, Inc._, _supra_; _Rodríguez Meléndez_ v. _Sup. Amigo, Inc._, 126 D.P.R. 92 (1990); _Rivera Aguila_ v. _K-Mart de P.R._, 123 D.P.R. 589 (1989); _Odriozola_ v. _Superior_

Cosmetics Distributors, etc., 116 D.P.R. 482 (1985); **Ibáñez** v. **Molinos de P.R., Inc.**, **supra**.[19]

Por el contrario, al adjudicar controversias de discrimen político, siempre expresamos que el reclamante tiene que probar los hechos básicos, pues "[d]e otra forma no es posible ni razonable exigirle al Estado que derrote una presunción sostenida solamente por una alegación." **McCrillis** v. **Aut. Navieras de P.R.**, 123 D.P.R. 113, 141 (1989); **Báez Cancel** v. **Alcalde Mun. de Guaynabo**, 100 D.P.R. 982 (1972); **Navedo** v. **Municipio de Barceloneta**, 113 D.P.R. 421 (1982).

En el caso ante nos, incorrectamente la mayoría señala que la presunción de discrimen –en la modalidad política–, se activa con sólo demostrarse que el patrono no tenía justa causa para el despido. Sin embargo acepta, al exponer la norma jurisprudencial, que además, tiene que establecerse: 1) ausencia de motivo racional para el despido; 2) estar en el grupo protegido –de afiliación política distinta a la del patrono–; 3) haber sido sustituido por otro empleado de diferente afiliación política, que resulta a fin con la de la Autoridad nominadora. **McCrillis** v. **Aut. Navieras de P.R.**, **supra**; **Rodríguez Cruz** v. **Padilla Ayala**, 125 D.P.R. 486 (1990). No obstante, equipara los hechos básicos requeridos en cada modalidad de discrimen a simples alegaciones. Señala que "en la demanda hay que alegar que había una relación obrero-patronal (o de aspirante a empleo), y que se tomó una acción adversa en contra del empleado o del aspirante y, por último, que el demandante cae dentro del grupo que protege la legislación en cuestión". (Nota al calce 12, pág. 10).

Argumenta también, que una vez activada la presunción, el demandado tiene tres formas de atacarla: 1) derrotar el hecho básico –para la mayoría, la alegación **de que no hubo justa causa**–; 2) destruir el hecho presumido, –también equiparado a la alegación **de discrimen**– y 3) atacar ambas.

Meras alegaciones no hacen prueba. **Mucho menos, prueba de hechos básicos para activar una presunción** fuerte, **la cual sólo se rebate con prueba que persuada al juzgador, y que ante la duda, se tiene que asumir el hecho presumido. Así lo reconocimos en McCrillis v. Aut. de**

---

[19] Éste es el verdadero alcance de nuestras expresiones al efecto de que la circunstancia esencial para activar la presunción es el despido sin justa causa, expuestos en Belk Arce v. Martínez, supra e Ibáñez v. Molinos de P.R., Inc., supra.

Claramente las mismas fueron vertidas en el contexto del análisis del efecto de la presunción.

En Ibáñez, caso de discrimen por edad, señalamos que aunque la reclamante cumplió su carga de probar hechos básicos y fue despedida sin justa causa, el patrono rebatió la presunción de discrimen con prueba suficiente. Al expresarnos sobre la diferencia entre la legislación de discrimen federal y la local, aludimos a la definición de despido injustificado provista por el Art. 2 de la Ley Núm. 80, para subrayar que Ibáñez cumplió con el requisito adicional de nuestra legislación –establecer que el despido fue injustificado–, por lo que tenía a su disposición la presunción.

El Art. 2 de la Ley Núm. 80 se limita a dar algunos ejemplos, no exhaustivos, de lo que sería justa causa y que constituiría ausencia de justa causa para el despido. No establece que la falta de justa causa es suficiente para activar la presunción de la Ley Núm. 100. Por su parte la Ley Núm. 100, tampoco alude a la definición justa causa de la Ley Núm. 80 ni le atribuye ser el único elemento básico a probarse para activar la presunción de discrimen. En Belk Arce por su parte, al hablar de alegaciones, nos referimos a lo que los reclamantes aducían en la demanda.

Navieras de P.R., supra, pág. 141, al resolver que la mera alegación de un hecho básico, o de discrimen político no activa la fuerte presunción o inferencia de discrimen. El reclamante tiene que establecer "la ausencia de motivo racional para el despido y la sustitución por otro empleado de diferente afiliación política que resulta afín con la de la autoridad nominadora."

Recapitulando, para activar la presunción de la Ley Núm. 100, es necesario probar los hechos básicos exigidos en cada modalidad, además de la ausencia de justa causa.

Concurrimos sin embargo, que el caso de autos no podía resolverse sumariamente. Ante la alegación de discrimen de Socorro Alberty Marrero es menester darle la oportunidad para que pueda desfilar prueba sobre los hechos básicos que activen la presunción, o en la alternativa, prueba directa del discrimen, de tenerla disponible.

ANTONIO S. NEGRÓN GARCÍA
Juez Asociado