Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| EDWIN TORRES VEGA<br><br>Recurrida<br><br>v.<br><br>HOSPITAL DE LA CONCEPCIÓN, ET AL.<br><br>Peticionaria | KLCE202400110<br><br>Consolidado<br><br>KLCE202400165 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil Número: MZ2020CV00570<br>Salón: 307<br><br>Sobre:<br>Impericia Médica |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Comparecen el Dr. Ricardo Fontanet Sánchez y Puerto Rico Medical Defense Insurance Company y el Hospital de La Concepción, Inc. (conjuntamente "peticionarios") vía *certiorari* y nos solicitan que revoquemos la *Resolución* del Tribunal de Primera Instancia, Sala Superior de Mayagüez, emitida el 9 de enero de 2024. Mediante dicho dictamen, el foro primario declaró sin lugar las solicitudes de sentencia sumaria de los peticionarios. Por los fundamentos que expresamos a continuación, denegamos el auto de *certiorari* solicitado.

En síntesis, el caso de epígrafe trata de una demanda por impericia médica presentada por el señor Edwin Torres Vega (señor Torres Vega o recurrido). Luego de un accidente automovilístico ocurrido en 2018, el señor Torres Vega fue transportado al Centro de Diagnóstico y Tratamiento (CDT) de Guánica, donde ocurrió una

conversación telefónica entre un médico del CDT y el Dr. Fontanet Sánchez, un cirujano ortopeda con una práctica privada que goza de privilegios en el Hospital de La Concepción. Supuestamente, el médico del CDT mencionó que el paciente consentía a que lo trasladaran al Hospital para ser atendido por el Dr. Fontanet Sánchez. Al llegar al Hospital, el Dr. Fontanet Sánchez le indicó al señor Torres Vega la necesidad de hacer una intervención quirúrgica. Por la alegada incapacitación del señor Torres Vega, la hermana de este, la señora Evette M. Torres Vega, firmó el formulario de consentimiento, sin antes leer el mismo.

Poco después, se le realizó al señor Torres Vega un procedimiento quirúrgico que involucró una reducción abierta con fijación interna de la fractura de la patela y la remoción de fragmentos intraarticulares. Sin embargo, no se le administró anticoagulantes u otro tratamiento preventivo de embolismos antes o después de la cirugía ni en las citas de seguimiento con el Dr. Fontanet Sánchez, quien sólo ordenó terapias con una fisiatra. En el día de una de las mencionadas citas, el señor Torres Vega se desmayó en el vestíbulo del Hospital, cayendo al suelo y perdiendo el conocimiento. Después de hacerse unos estudios, el Hospital encontró que el señor Torres Vega tenía una embolia pulmonar bilateral, por la cual tuvo que ser hospitalizado.

Luego de los hechos descritos, el señor Torres Vega presenta una demanda contra el Dr. Fontanet Sánchez y el Hospital, entre otros, por impericia médica, alegando que el Dr. Fontanet Sánchez no tomó las medidas reconocidas y necesarias para la prevención de tromboembolismos y que el Hospital no cuidó adecuadamente del recurrido posterior a su caída. Oportunamente, los peticionarios

contestaron separadamente la demanda y las partes comenzaron sus respectivos descubrimientos de prueba, cual incluyó la deposición de un perito ortopeda que explicó la necesidad de administrar anticoagulantes cuando haya fracturas en las extremidades inferiores, aunque no exista conceso sobre esto en la comunidad científica. Para el 27 de abril de 2023, el señor Torres Vega le requirió al Dr. Fontanet Sánchez producir documentos sobre su participación en la facultad académica (*teaching staff*) del Hospital, los cuales no han sido presentados.

Eventualmente, los peticionarios solicitaron sentencia sumaria de manera separada, a la cual el foro primario declaró sin lugar por todavía existir controversia sobre el manejo del Hospital al darle de alta al señor Torres Vega y si existe necesidad de prescribir medicamentos anticoagulantes ante situaciones médicas como la del recurrido. Insatisfechos, los peticionarios, de manera separada, recurrieron ante el foro apelativo, argumentando en resumidas cuentas que el Tribunal de Primera Instancia erró al: (1) ignorar hechos esenciales probados sobre los cuales no hay controversia; (2) utilizar como criterio para resolver la solicitud el que las alegaciones de las partes surge la existencia de controversias; (3) no determinar que el Hospital no debe ser una parte demandada, ya que el Dr. Fontanet Sánchez tiene una práctica privada; y (4) omitir los hechos específicos incontrovertidos de su *Resolución*.

En respuesta a los recursos de *certiorari*, el señor Torres Vega alega que todavía existe controversia sobre: (1) el contenido de la llamada telefónica entre el médico del CDT de Guánica y el Dr. Fontanet Sánchez y las circunstancias de la transferencia del señor Torres Vega al Hospital; (2) la falta de consentimiento informado del

señor Torres Vega; (3) las órdenes médicas impartidas para el cuidado del paciente fuera del Hospital; y (4) la relación profesional entre el Dr. Fontanet Sánchez y el Hospital.

Vale recordar que el auto de *certiorari* es el vehículo procesal, discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos. Regla 52.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V); Regla 40 del Tribunal de Apelaciones (4 LPRA Ap. XXII-B). Conforme a la referida Regla 52.1, los criterios que permiten la expedición de un *certiorari* consisten en revisar una orden de carácter dispositivo o resolución según las Reglas 56 y 57 de *Procedimiento Civil*. Regla 52.1 de Procedimiento Civil, *supra*. Por lo tanto, la función del Tribunal Apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del foro primario y predicar su intervención en si la misma constituyó un abuso de discreción; en ausencia de evidencia suficiente de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Job Connection Center, Inc. v. Supermercados Econo, Inc.*, 185 DPR 585 (2012) (citando a *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170 (1992); *Lluch v. España Service Sta.*, 117 DPR 729 (1986)).

Por su parte, el mecanismo procesal de la sentencia sumaria se rige por la Regla 36 de Procedimiento Civil y tiene como finalidad la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales. Véase Regla 36 de Procedimiento Civil, *supra*; *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012). Así, la Regla 36.2 permite que cualquiera de las partes

pueda solicitar que se dicte sentencia sumaria sobre la totalidad o sobre cualquier parte de una reclamación. Regla 36.2 de Procedimiento Civil, *supra*. Véase, también, *Torres Pagán v. Municipio Autónomo de Ponce,* 191 DPR 583 (2014). A su vez, se ha establecido que su peticionario debe establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, es decir, suficiente para que sea necesario dirimirlo en un juicio plenario. Regla 36.1 de Procedimiento Civil, *supra*. Véase también, *Ramos Pérez v. Univisión,* 178 DPR 200 (2010).

En cuanto al estándar de revisión aplicable, el Tribunal de Apelaciones utilizará los mismos criterios que el foro de primera instancia al determinar la correspondencia de la sentencia sumaria, aunque limitado a considerar aquellos documentos presentados en el foro primario y obligado a cumplir con la Regla 36.4 de *Procedimiento Civil*. Regla 36.4 de Procedimiento Civil, *supra*. Debemos, por tanto, examinar *de novo* el expediente y verificar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma; luego, revisar si en realidad existen hechos materiales en controversia y, de encontrar que los hechos materiales realmente están incontrovertidos, revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015).

Ahora bien, la solicitud de sentencia sumaria, al igual que su oposición, debe incluir una relación concisa y organizada, y en párrafos enumerados, de todos los hechos esenciales sobre los cuales hay o no hay controversia sustancial, con indicación de los párrafos o las páginas de la prueba admisible en evidencia donde se establecen estos hechos.

Regla 36.3 de Procedimiento Civil, *supra*. De no cumplirse con los requisitos de forma, el foro primario no estará obligado a considerar aquellos hechos que no han sido específicamente enumerados y que no tienen una referencia a los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen. Íd. Véase, también, *Zapata Berríos v. J.F. Montalvo Cash & Carry, Inc.*, 189 DPR 414 (2013). Incluso, el foro primario no podrá considerar como prueba meras alegaciones y teorías. *Pereira Suárez v. Jta. de Directores*, 182 DPR 485 (2011) (citando a *Alberty v. Bco. Gub. de Fomento*, 149 DPR 655, 671 (1999); *Pueblo v. Amparo*, 146 DPR 467, 478 (1998); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497 (1994); *Ramos, Escobales v. García González*, 134 DPR 969 (1993); *Defendini Collazo et al. v. ELA, Cotto*, 134 DPR 28 (1993)).

En cuanto a la impericia médica, el Tribunal Supremo ha dejado claro que el médico tiene una amplia discreción profesional en su trabajo y no se le imputa responsabilidad cuando se enfrenta a una situación en la cual cabe la duda educada y razonable sobre cuál es el curso médico para seguir. *Santiago Otero v. Méndez*, 135 DPR 540 (1994) (citando a *Cruz Rodríguez v. Centro Médico*, 113 DPR 719, 732 (1983); *Oliveros v. Abréu*, 101 DPR 209, 228 (1973)). De hecho, se le ha reconocido al médico una presunción de haber ejercido un grado razonable de cuidado y de haber ofrecido un tratamiento adecuado. *Arrieta v. de la Vega*, 165 DPR 538 (2005) (citando a *Rodríguez Crespo v. Hernández*, 121 DPR 639 (1988)). No obstante, el criterio de razonabilidad supone que el médico efectúe todos los exámenes necesarios para llegar a un diagnóstico correcto. Íd. (citando a *Morales v. Hospital Matilde Brenes*, 102 DPR 188 (1974)). Por lo tanto, para

rebatir las referidas presunciones, el demandante debe demostrar (1) cuáles son las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o a los especialistas; (2) que el demandado incumplió con estas normas en el tratamiento del paciente; y (3) que esto fue la causa de la lesión sufrida por el paciente. Íd. (citando a *Medina Santiago v. Vélez*, 120 DPR 380, 385 (1988)). Véase, también, Art. 1802 del Código Civil de 1930 (31 LPRA sec. 5141).[1]

De otra parte, el Tribunal Supremo ha resuelto que los hospitales responden vicariamente por los médicos que son sus empleados o son parte de su facultad y están disponibles para consultas con otros médicos, y responden conjuntamente cuando los concesionarios de franquicias exclusivas para prestar servicios en el hospital cometan actos de impericia médica. *Fonseca v. Hospital HIMA*, 184 DPR 281 (2012) (citando a *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 515-516 (2009); *Márquez Vega v. Martínez Rosado*, 116 DPR 397, 407 (1985); *Núñez v. Cintrón*, 115 DPR 598, 606 (1984)). Igualmente, los hospitales responden por los daños ocasionados al no tener disponible el equipo básico necesario y modernos para atender aquellas situaciones previsibles, o cuando tengan políticas institucionales que obstaculicen el cuidado de los pacientes. Íd. (citando a *Núñez v. Cintrón*, supra; *Blas Toledo v. Hosp. Guadalupe*, 146 DPR 267, 323-327 (1998); *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721 (1984)).

Como corolario de lo anterior, los hospitales responden por aquellos médicos con prácticas privadas que gozan de privilegios en la institución. *Cruz Flores v. Hosp. Ryder Mem'l Inc.*, 210 DPR 465

---

[1] Por razón de los hechos haber ocurrido en el 2018, se utilizará el Código Civil del 1930 para fundamentar nuestros criterios. Véase Art. 1815 del Código Civil de 2020 (31 LPRA sec. 11720).

(2022) (citando a *Fonseca v. Hosp. HIMA*, *supra*, pág. 289; *Márquez Vega v. Martínez Rosado*, *supra*). Sin embargo, los hospitales solo responden por su propia negligencia si el perjudicado es un paciente privado del médico con privilegios. Íd. En vista de ello, los hospitales son responsables si incumplen con la obligación continua de velar por la salud de los pacientes y garantizar su seguridad y bienestar mientras estén en la institución. Íd. (citando a *Márquez Vega v. Martínez Rosado*, *supra*, pág. 409).

De conformidad con los hechos del presente caso, no advertimos errores del Tribunal de Primera Instancia al denegar las solicitudes de sentencia sumaria. Según el expediente, existe controversia sobre lo acontecido en la conversación entre el Dr. Fontanet Sánchez y el médico del CDT de Guánica, en lo relativo al consentimiento del recurrido a ser atendido por el Dr. Fontanet Sánchez en el Hospital. Tampoco en esta etapa es un hecho incontrovertido lo atinente a la relación entre el Dr. Fontanet Sánchez y el Hospital, o la participación de este en el *teaching staff* de la institución.

Además, la deposición del perito deja dudas sobre cuál es la mejor práctica médica en casos quirúrgicos como el de autos. Aunque el perito admite que hay poco conceso en la comunidad científica sobre la profilaxis diagnóstica y el manejo de tromboembolismos venosos en pacientes con fracturas como las del recurrido, también alude a que los ortopedas deben administrar anticoagulantes en estos tipos de casos médicos. Al determinar la mejor práctica médica en estos tipos de intervenciones quirúrgicas, el foro primario podrá evaluar la existencia de responsabilidad en lo pertinente a la controversia.

En vista de ello, y evaluado cabalmente el expediente, denegamos el auto solicitado en función de la existencia de controversias sustanciales de hechos, según determinados por el foro recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Álvarez Esnard concurre, sin escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones