

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Universidad de Puerto Rico en Aguadilla<br><br>    Peticionaria<br><br>      v.<br><br>José Lorenzo Hernández<br><br>      Recurrido | Certiorari<br><br>2012 TSPR 57<br><br>184 DPR ____ |

Número del Caso: CC-2010-0543

Fecha: 27 de marzo de 2012

Tribunal de Apelaciones:

        Región Judicial de Aguadilla

Abogados de la Parte Peticionaria:

        Lcdo. Luis M. Vázquez
        Lcda. Xiomara del Toro Díaz

Abogado de la Parte Recurrida:

        Lcdo. Samuel Figueroa González

Materia: Ley 3 – 1998, Ley de Hostigamiento Sexual en las Instituciones de Enseñanza; conducta constitutiva de hostigamiento sexual en el contexto académico.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Universidad de Puerto Rico en
Aguadilla

    Peticionaria

        v.

José Lorenzo Hernández

    Recurrido

*Certiorari*

CC-2010-0543

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

San Juan, Puerto Rico, a 27 de marzo de 2012.

Hoy examinamos por primera vez las disposiciones de la Ley 3-1998, según enmendada, conocida como Ley de Hostigamiento Sexual en las Instituciones de Enseñanza, 3 L.P.R.A. sec. 149 *et seq*. Particularmente debemos resolver si el acercamiento de un profesor a un estudiante universitario constituyó hostigamiento sexual a tenor con dicha ley y en violación al Reglamento General de la Universidad de Puerto Rico, Reglamento Núm. 6479, Departamento de Estado, 25 de junio de 2002, según enmendado. Esto, en el contexto de una revisión judicial de las sanciones disciplinarias impuestas por una institución educativa.

I

Félix Cruz Morales (en adelante, estudiante o señor Cruz Morales) cursaba estudios en la Universidad de Puerto Rico (en adelante Universidad o institución) del Recinto de Aguadilla cuando presentó una Querella por hostigamiento sexual ante las autoridades universitarias contra el Dr. José Lorenzo Hernández (en adelante doctor Lorenzo Hernández o recurrido). Para la fecha, el recurrido se desempeñaba como Catedrático en el Departamento de Ciencias Sociales de la institución.

Luego de varios incidentes procesales, así como, de los trámites informales requeridos por la reglamentación vigente, el Rector de la Universidad de Puerto Rico en Aguadilla - Prof. José Luis Arbona Soto- formuló cargos contra el recurrido el 10 de abril de 2007. Esto por violaciones a las Secs. 35.2.8, 35.2.14, 35.2.18 y 35.2.19 del Reglamento General de la Universidad de Puerto Rico, *supra*;[1] el Art. II, Sec. I de la Carta de

---

[1] La Sección 35.2 del Reglamento General de la Universidad de Puerto Rico, Reglamento Núm. 6479, Departamento de Estado, 25 de junio de 2002, según enmendado, indica que,

"las autoridades nominadoras podrán tomar acción disciplinaria contra los miembros del personal universitario por cualquiera de las siguientes causas :

…

Sección 35.2.8 - Actos que bajo los cánones de responsabilidad moral prevalecientes en la comunidad constituyen conducta inmoral.

Derechos de la Constitución de Puerto Rico, L.P.R.A., Tomo I, ed. 2008, pág. 272; el Título IX de la Ley Federal de Educación, Ley Púb. Núm. 92-318, 23 de junio de 1972 (86 Stat. 373), 20 U.S.C. 1681 *et seq.*, según enmendada, conocida en inglés como *Title IX of* the *Education Amendments of 1972*; la Ley 3-1998, *supra*, y la Carta Circular Núm. 95-06, conocida como Procedimiento Enmendado para Tomar Acción Informal o Formal sobre Querellas de Hostigamiento Sexual o Discrimen por Razón de Sexo.[2]

Tras el procedimiento correspondiente, el Oficial Examinador – Lcdo. Wilson Cabán Ayala - determinó que el señor Cruz Morales era estudiante del Recinto de Aguadilla y que tomó dos (2) cursos con el recurrido durante el Año Académico 2005-2006. Durante este periodo visitó con frecuencia la oficina del recurrido a quien admiraba por sus conocimientos en el área de la psicología.

---

…

> Sección 35.2.14 - La comisión de cualquier acto obsceno, impúdico o lascivo.
> …
> Sección 35.2.18 - Conducta que constituya delito bajo las leyes del Estado Libre Asociado de Puerto Rico y sea perjudicial al buen nombre de la Universidad.
>
> Sección 35.2.19 - Violaciones a la Ley de la Universidad, a las disposiciones de este Reglamento y demás reglamentos universitarios".

[2] *Formulación de Cargos,* Apéndice de la Petición de *Certiorari*, pág. 133.

No obstante, para el primer semestre del Año Académico 2006-2007 el señor Cruz Morales ya no era estudiante del doctor Lorenzo Hernández mas si de la Prof. Mirza González. La profesora González compartía uno de los dos (2) cubículos que correspondían a la oficina de ella y del recurrido. Asimismo, durante ese semestre la Universidad se encontraba en el proceso de selección del Rector y el recurrido era uno de los candidatos para ese puesto.

En ese contexto, el 13 de octubre de 2006 el señor Cruz Morales acudió a la oficina de la profesora González a discutir su desempeño en una presentación. Luego se dirigió a la oficina del recurrido a saludarlo. El señor Cruz Morales indicó que conversaron sobre distintos temas, pero que durante la conversación el recurrido "le tomó las manos, le masajeó los brazos y el pecho y … se le acercó respirando en el cuello y luego le lamió una oreja".[3] Ante esta situación, salió de la oficina; llamó a una amiga para contarle lo sucedido y posteriormente presentó la Querella de autos. Además, señaló que el doctor Lorenzo Hernández no le había faltado el respeto en ocasiones previas y que el incidente duró unos minutos.

El Oficial Examinador recomendó la desestimación de los cargos contra el doctor Lorenzo Hernández y el

---

[3] *Informe del Oficial Examinador,* Apéndice de la Petición de *Certiorari*, pág. 171.

archivo de los mismos con perjuicio. Concluyó que se violó el derecho a un debido proceso de ley al no notificar correctamente la Querella y al excederse de los términos del proceso informal establecidos en la Carta Circular 95-06, *supra*. Además, concluyó que no se demostró que ocurriera hostigamiento sexual en ninguna de sus modalidades. Particularmente expresó que no se afectó el rendimiento académico del estudiante y que el incidente ocurrió en una sola ocasión y duró unos minutos.

Así las cosas, el Rector del Recinto de Aguadilla emitió la Resolución correspondiente. Este no acogió las recomendaciones expuestas en el Informe del Oficial Examinador por entender que las conclusiones de derecho y las recomendaciones no se ajustaban al derecho existente sobre hostigamiento sexual en el marco académico, pues, el Informe no diferenciaba apropiadamente entre un ambiente obrero-patronal y un ambiente académico. Finalmente destituyó al doctor Lorenzo Hernández como Catedrático mediante una Resolución emitida el 11 de diciembre de 2008.

El doctor Lorenzo Hernández recurrió ante el Presidente de la Universidad de Puerto Rico, Lcdo. Antonio García Padilla. Este ordenó la desestimación del recurso. Por ello, el doctor Lorenzo Hernández recurrió ante la Junta de Síndicos; cuerpo que denegó la apelación

y sostuvo la determinación del Presidente de la Universidad.

Inconforme, el recurrido presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. El 23 de abril de 2010, el foro *a quo* revocó la determinación de la Junta de Síndicos al concluir que no existía prueba que demostrara que la conducta imputada al recurrido constituyera un ambiente de estudios intimidante, hostil u ofensivo que fuera lo suficientemente severa y ofensiva para afectar al señor Cruz en sus estudios de conformidad con la jurisprudencia de la Ley Núm. 17, *infra*.

Inconforme, la Universidad recurre ante nos y señala los errores siguientes:

> Erró el Tribunal de Apelaciones al revocar a la Junta de Síndicos de la Universidad resolviendo que a base de los hechos determinados en el caso de autos no se probó la conducta imputada de hostigamiento sexual en una institución de enseñanza conforme a la Ley Núm. 3 de 4 de enero de 1998.

> Erró el Tribunal de Apelaciones al revocar a la Junta de Síndicos dejando totalmente impune de sanciones disciplinarias al recurrido aun cuando se probó que la conducta imputada violó el Reglamento General de la Universidad.

Examinado el recurso, acordamos expedir. Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II

Previo a examinar la controversia medular es necesario discutir algunos planteamientos presentados por el recurrido en su *Alegato de Réplica*. Este cuestiona principalmente los fundamentos para su destitución y el proceso adjudicativo seguido.[4] Puesto que todos los planteamientos en cuanto al procedimiento administrativo están interrelacionados, los discutiremos en conjunto.[5]

Primero, el recurrido postula que la Universidad no observó los términos que dicta la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 2101 *et seq.* Específicamente, alega una violación de los

---

[4] Los planteamientos del recurrido en cuanto a su destitución se resumen en que fue destituido conforme a cargos no probados pues no se presentó el *quantum* de prueba necesario. Además, señala que hubo ausencia de dos (2) elementos constitutivos de hostigamiento sexual. Sobre el particular arguye que el hostigamiento sexual por ambiente hostil requiere que se configure un patrón y que los actos "hayan causado tal grado de ansiedad y debilitamiento de la estima y confianza propias del demandante, que sus condiciones de empleo se hayan contaminado impermisiblemente". Recurso de Revisión, Apéndice de la Petición de *Certiorari*, pág. 108, citando a *S.L.G. Afanador v. Roger Electric, Co., Inc.*, 156 D.P.R. 651 (2002). Estos planteamientos son atendidos en la Parte IV de esta Opinión.

[5] Luego de examinar todos los planteamientos adicionales, resolvemos que no atenderemos otras alegaciones presentadas por el recurrido. Este alega que el Rector entregó las grabaciones originales al abogado de la querellante, sin proveerse antes, una copia al querellado y sin garantías de una adecuada custodia de las mismas. Indica que se extravió parte de las grabaciones. Añade que el Rector utilizó prueba ajena al expediente y que intentó inducir a perjurio al Oficial Examinador al solicitarle determinaciones de hechos adicionales. Además, argumenta que el Rector concluyó que el estudiante "sufrió daños emocionales, sin que hubiese determinaciones de hechos en ese sentido…".

Sin embargo, el recurrido menciona someramente estos planteamientos sin discutir y fundamentar apropiadamente sus contenciones. Véase, Regla 33 del Reglamento del Tribunal Supremo de 1996, 4 L.P.R.A. Ap. XXI-A (2002) R. 33. Por tal razón, el recurrido no nos puso en posición de resolver sus planteamientos adicionales.

términos dispuestos en los Arts. 3.13(g) y 3.14 de la Ley Núm. 170, *supra*, 3 L.P.R.A. secs. 2163(g) y 2164. Esas secciones disponen un término de seis (6) meses para resolver el procedimiento adjudicativo ante las agencias y otro término de noventa (90) días para emitir una Resolución final después de concluida la vista o presentadas las determinaciones de hechos y conclusiones de derecho.

A estos efectos, la Asamblea Legislativa impuso a las agencias la obligación de adjudicar todo caso dentro de los términos señalados. Hemos señalado que ambos términos son directivos y no jurisdiccionales. *O.E.G. v. Román*, 159 D.P.R. 401, 420 (2003); *Lab. Inst. Med. Ava. v. Lab. C. Borínquen*, 149 D.P.R. 121 (1999); *J. Exam. Tec. Méd. v. Elías et al.*, 144 D.P.R. 483, 494-495 (1997). Sin embargo, la ampliación de los términos sólo ocurre en las circunstancias dispuestas en la Ley Núm. 170, *supra*, "a saber, circunstancias excepcionales, consentimiento escrito de todas las partes, o causa justificada". *Lab. Inst. Med. Ava. v. Lab. C. Borínquen*, supra, pág. 136. Ante el incumplimiento de una agencia con su deber de decidir expeditamente la parte afectada tiene disponible como remedios "la presentación de un *mandamus* ante el foro judicial, o una moción de desestimación ante la agencia concernida". Íd.

En el caso de autos, por tratarse de la Querella de un estudiante la Procuradora Estudiantil era la persona a cargo de la investigación inicial. Esta no debía exceder los quince (15) días laborables. Sin embargo, el recurrido no cooperó con ella. La Procuradora Estudiantil le citó para que ofreciera su versión de los hechos. No obstante, el doctor Lorenzo Hernández indicó que en esos momentos estaba en proceso de candidatura para la Rectoría y que no contaba con "el tiempo para responder a [la] situación presentada por el estudiante".[6] Posteriormente, debido a que el doctor Lorenzo Hernández era candidato para la Rectoría, la entonces Rectora del Recinto se inhibió. Esta inhibición causó dilación en los procedimientos pues la investigación se refirió al Presidente de la Universidad para que este, a su vez, reasignara la investigación a otro Rector; todo ello en beneficio de la pulcritud de los procesos que enfrentó el doctor Lorenzo Hernández.

Asimismo, durante el procedimiento de adjudicación formal que comenzara con la formulación de cargos, el doctor Lorenzo Hernández nunca solicitó mediante *mandamus* o moción de desestimación que se resolviera dentro del término ante el alegado incumplimiento.[7] *A contrario*

---

[6] *Informe de la Procuradora Estudiantil de la U.P.R. de Aguadilla*, Elsa I. Colón, Apéndice de la Petición de *Certiorari,* pág. 117.

[7] El recurrido solicitó la desestimación del procedimiento por falta de *quantum* de prueba el 25 de enero de 2008. *Memorando de Derecho*, Apéndice de la Petición de *Certiorari*, pág. 144.

*sensu*, presentó este argumento por primera vez durante la apelación. Por tales razones, resolvemos que la Universidad no cometió la violación imputada.

Por otro lado, el recurrido plantea como violaciones procesales que el Rector incluyera como hechos probados las alegaciones de un testigo no creídas por el Oficial Examinador; que no le remitiera el Informe del Oficial Examinador conjuntamente con la Resolución; que esta careciera de determinaciones de hechos, y que se incorporara en la decisión institucional el asesoramiento de dos (2) expertos de la Universidad.

Ciertamente, el recurrido merece una adjudicación imparcial, basada en el expediente tal como exige la Ley Núm. 170, *supra*. Esto es parte del debido proceso de ley a que tiene derecho. Sin embargo, debemos aclarar que al igual que en otras agencias, el procedimiento administrativo seguido por la Universidad culmina con la decisión de la institución luego de un proceso adjudicativo en el que intervienen diversas personas con distintas funciones.

Tal como requiere el procedimiento de adjudicación formal, la autoridad nominadora designa un Oficial Examinador para atender el trámite de la Querella y recibir prueba, pero retiene su facultad decisoria. Al ejercerla posteriormente, esta no tiene que acoger la totalidad del Informe del Oficial Examinador de no

considerarlo correcto. Sin embargo, esta decisión pudiera tornar más rigurosa su revisión posterior. *Misión Ind. P.R. v. J.C.A.*, 145 D.P.R. 908, 933-934 (1998); *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 208 (1987). Lo "[e]sencial al debido proceso [es que la autoridad nominadora tome] una decisión informada con conocimiento y comprensión de la evidencia ofrecida, sin que importe al caso el medio o mecanismo por el que esa inteligencia de la cuestión debatida llegue a su poder". *A.D.C.V.P. v. Tribunal Superior*, 101 D.P.R. 875, 883 (1974). Es más, como hemos expresado, especialistas en diversas disciplinas del personal de la agencia pueden contribuir a la redacción de informes finales. La persona facultada a decidir puede descansar en estos, pues no cuenta necesariamente con el conocimiento especializado para ello.[8] *A.D.C.V.P. v. Tribunal Superior*, supra, pág. 882. Véase además, D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, pág. 185.

En el caso de autos, a la autoridad nominadora de la unidad institucional era a quien le correspondía adjudicar finalmente la controversia de conformidad con el récord. Art. XVI, Certificación Núm. 44 del Consejo de Educación Superior (1984-85), Reglamento Núm. 3901, Departamento de Estado, 13 de abril de 1989, conocido

---

[8] Al respecto, el recurrido reconoció que el Rector puede servirse de todo el asesoramiento legal necesario para cuestiones técnicas.

como Normas para Reglamentar los Procedimientos Disciplinarios que Afecten al Personal Universitario.

La Resolución emitida indica que:

[a]l leer detenidamente el informe del Oficial Examinador se advierte que la recomendación de desestimación no se fundamenta en un cuestionamiento de los sucesos relatados por el estudiante querellante, Sr. Félix Cruz, sino en alegaciones procesales y de derecho. Puesto que el Oficial Examinador no puso en entredicho la veracidad de los hechos alegados por el estudiante, sentimos la responsabilidad de ser muy cuidadosos antes de acoger o rechazar la recomendación de desestimación contra el Dr. Lorenzo. Pesa el deber de proteger el derecho del querellado, pero también el del querellante y el de la propia Universidad, cuya responsabilidad primaria es garantizar un ambiente libre de hostigamiento sexual.[9]

Particularmente la Resolución concluye:

- que las objeciones procesales y las conclusiones de derecho que sirven de base a las conclusiones del Oficial Examinador son contrarias al estado de derecho existente en el Estado Libre Asociado de Puerto Rico y a la Política Pública de no tolerancia al Hostigamiento Sexual de la Universidad de Puerto Rico,

- que el Informe no diferencia apropiadamente entre un ambiente obrero patronal y un ambiente académico,

- que acoger la tesis adelantada por el Oficial Examinador – en el sentido de que un solo acto de avance sexual con contacto físico no deseado no es suficiente para constituir hostigamiento sexual, independientemente de su intensidad y efecto – implicaría dejar a los estudiantes de la Universidad expuestos a conducta repetida de hostigamiento sexual de parte de un profesor obrando sobre víctimas distintas para eludir ser sancionado.[10]

---

[9] Resolución, Apéndice de la Petición de *Certiorari*, pág. 180.

[10] Íd., pág. 184.

Como podemos observar, el Rector analizó detenidamente las recomendaciones del Oficial Examinador. No obstante, descartó las conclusiones de derecho del Informe del Oficial Examinador al considerarlas contrarias a la política pública y al propio funcionamiento de la institución. En cambio, adoptó en la Resolución el asesoramiento de otros dos (2) expertos de la Universidad. Esto es cónsono con sus facultades institucionales.

Por lo tanto, tras examinar el expediente ante nuestra consideración, no hemos encontrado evidencia que apoye los planteamientos del recurrido. Es más, las conclusiones de derecho del Rector y las determinaciones de hechos que este adoptara, son cónsonas también con las determinaciones de hechos expuestas en el Informe del Oficial Examinador. Por lo tanto, resolvemos que estas son meras alegaciones, sin evidencia y desvirtuadas de su contexto por el doctor Lorenzo Hernández. Al respecto, hemos establecido en repetidas ocasiones que meras alegaciones no constituyen prueba. *Pereira Suárez v. Jta. Dir. Cond.*, res. en 30 de junio 2011, 182 D.P.R. ___ (2011), 2011 T.S.P.R. 102, 2011 J.T.S. 107; *Alberty v. Bco. Gub. de Fomento*, 149 D.P.R. 655, 671 (1999). Esto cobra mayor fuerza en el procedimiento administrativo que tiene a su favor una presunción de regularidad y corrección. *Henríquez v. Consejo Educación Superior*, *supra*, pag. 210. En el caso de autos la determinación

administrativa no demuestra ser arbitraria, caprichosa o discriminatoria.

No obstante, no podemos pasar por alto que el Informe del Oficial Examinador no fue notificado conjuntamente con la Resolución. La reglamentación pertinente indica que "copia del informe del Oficial Examinador será enviada conjuntamente con la Resolución emitida por la autoridad nominadora al querellado". Art. XV de la Certificación Núm. 44, supra. Sin embargo, esta fue adquirida de forma separada y previa. No podemos concluir que su obtención separada haya causado perjuicio alguno al recurrido ni violado el debido proceso de ley. *Hernández García v. J.R.T.*, 94 D.P.R. 22, 29 (1967). El recurrido tuvo la oportunidad de usarlo en su defensa y pudo ejercitar su derecho a apelar ante el Presidente de la Universidad, luego ante la Junta de Síndicos y finalmente en los tribunales.

Atendido lo anterior pasemos a resolver las controversias relacionadas con el hostigamiento sexual en las instituciones de enseñanza.

III

A. *Evolución legal del discrimen por sexo y la modalidad de hostigamiento sexual: antecedentes de la Ley 3-1998*

Nuestra Constitución declara como precepto cardinal la inviolabilidad de la dignidad de todo ser humano. A su vez, proclama nuestra igualdad ante la ley y prohíbe

el discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Art. II, Sec. 1, Const. P.R., L.P.R.A., Tomo 1, ed. 2008, pág. 272. Este cuerpo supremo de normas nos protege, *inter alia*, contra ataques abusivos a la honra, a la reputación, a la vida privada o familiar. Art. II, Sec. 8, Const. P.R., *supra*, pág. 317.

Fue en consecución de tales mandatos que la Asamblea Legislativa promulgó una serie de leyes para prohibir y responsabilizar por el discrimen por razón de sexo. Véanse, Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146-151; Ley Núm. 69 de 6 de julio de 1985, según enmendada, conocida como Ley contra el Discrimen en el Empleo por Razón de Sexo, 29 L.P.R.A. sec. 1321 *et seq.*; Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. secs. 155 *et seq.* Sin embargo, no fue hasta finales de los años 70 que se acuñó el término "hostigamiento sexual" y se puso nombre a una conducta discriminatoria que no había sido definida. B.W. Dziech y M.W. Hawkins, *Sexual Harassment in Higher Education: Reflections and New Perspectives*, 1998, pags. 4-5. Fue entonces que nuestro ordenamiento mediante la Ley Núm. 17, *supra*, declaró como política pública del Estado que el hostigamiento sexual es una modalidad de discrimen por razón de sexo y prohibió este tipo de conducta en el empleo. Véanse, *Delgado Zayas v. Hosp. Int. Med.*

*Avanzada*, 137 D.P.R. 643, 651 (1994); *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117, esc. 4(1990).

No obstante, tras diez (10) años desde su promulgación, la Asamblea Legislativa pudo observar el efecto detrimental del hostigamiento sexual en las instituciones de enseñanza sobre la dignidad del ser humano y cómo este quedaba fuera del marco de aplicación de la Ley Núm. 17, *supra*, y de las leyes federales aplicables.[11] Exposición de Motivos de la Ley Núm. 3, *supra*, 1998 Leyes de Puerto Rico, pág. 5.   Es por ello que mediante **la Ley Núm. 3**, ***supra***, **reconoció el contexto particular en el que se desarrolla el hostigamiento sexual en las instituciones educativas, así como sus implicaciones particulares en el derecho a la educación.** Esto, además de la violación que conlleva a la dignidad e igualdad de todo ser humano.[12]

---

[11] Mediante el Título IX de la Ley Federal de Educación, Ley Púb. Núm. 92-318, 23 de junio de 1972 (86 Stat. 373), 20 U.S.C. 1681 *et seq.*, según enmendada, conocida en inglés como *Title IX of* the *Education Amendments of 1972*, el ordenamiento federal prohibió que por razón de sexo cualquier persona sea excluida de participar, se le denieguen los beneficios o sea sometida a discrimen en cualquier programa o actividad educativa que reciba asistencia financiera federal. El Departamento de Educación Federal es la agencia encargada de ejecutar este mandato. Por otra parte, se ha interpretado que el Título IX incluye la prohibición de conducta constitutiva de hostigamiento sexual en las instituciones de enseñanza.

Por lo tanto, aquellas instituciones académicas que no reciben fondos federales no están amparadas bajo el Título IX. Exposición de Motivos, Ley 3-1998, según enmendada, 3 L.P.R.A. sec. 149 *et seq.*

[12] A pesar de las diferencias entre nuestro ordenamiento y el federal, la Corte Suprema federal reconoció en *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 650 (1999), también que: "Students are not only protected from discrimination, but also specifically shielded from being 'excluded from participation in' or 'denied the benefits of' any 'education program or activity receiving Federal

Así las cosas, la Ley Núm. 3, *supra*, prohibió el hostigamiento sexual contra los estudiantes en las instituciones de enseñanza de Puerto Rico.[13]    Dicho estatuto definió el hostigamiento sexual en estas instituciones y **reconoció como política pública del Estado velar porque los estudiantes - niños, jóvenes y adultos - tengan el derecho a realizar sus estudios libres de la presión que constituye el hostigamiento sexual**. 3 L.P.R.A. secs. 149a y 149b(a). Para ello, proveyó al estudiante diversos remedios, tales como, *pero sin limitarse a*: ser resarcido por daños; ser repuesto en sus estudios; presentar una Querella ante la institución y presentar una Demanda civil en el Tribunal de Primera Instancia y solicitar un interdicto de hacer o desistir. 3 L.P.R.A. sec. 149j.

Además, la Asamblea Legislativa le impuso a las instituciones de enseñanza diversas obligaciones con el fin de prevenir, desalentar y evitar este tipo de conducta, así como responsabilidad civil por aquellas actuaciones que constituyeran hostigamiento sexual.   3 L.P.R.A. secs. 149e-149i. A esos efectos, el grado de responsabilidad impuesto a las instituciones de enseñanza

---

financial assistance.' § 1681(a). The statute makes clear that, whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender".

[13] Mediante el término "institución de enseñanza" se ampara a todo estudiante de "toda escuela elemental, secundaria o superior, universidad, instituto, escuela vocacional o técnica, privadas o públicas reconocidas o no por los organismos reguladores, que ofrezcan programas de estudios o destrezas…" 3 L.P.R.A. sec. 149b(b).

varía dependiendo de la relación del hostigador con la institución. En cuanto a las actuaciones constitutivas de hostigamiento sexual por parte de su personal docente y no docente, serán responsables "independientemente de si los actos específicos objeto de controversia fueron o no prohibidos por la institución de enseñanza, e independientemente de si la institución y el personal docente y no docente de ésta sabía o debía estar enterada de la prohibición de la conducta". 3 L.P.R.A. sec. 149e. Sin embargo, en cuanto a otros actores (estudiantes o personas no empleadas), la responsabilidad queda limitada a situaciones en que la institución supiera o debiera saber de la conducta prohibida (salvo que tomara acción inmediata y apropiada).[14]

Por su parte y en cumplimiento de sus deberes bajo el ordenamiento federal y estatal, así como parte de su autoridad disciplinaria, la Universidad promulgó la *Política Pública en Relación con el Hostigamiento Sexual en la Universidad de Puerto Rico* mediante la Carta Circular Núm. 95-03 de 16 de agosto de 1994. En ella prohibió las conductas que presenten aspectos de hostigamiento o discrimen sexual sin importar la

---

[14] Estos grados de responsabilidad, así como otros aspectos de la ley, la distinguen de su homóloga federal, pero son similares a los dispuestos en la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. sec. 155b. **Cabe señalar que la ley también expresa que el estudiante que alegue haber sido afectado puede ser responsable en caso de levantar planteamientos frívolos al amparo de esta ley**. 3 L.P.R.A. sec. 149k.

jerarquía, puesto o sexo de las personas involucradas. Véase además, Carta Circular 95-06, *supra*.

La Universidad también desarrolló un procedimiento informal que atiende particularmente las preocupaciones expuestas por el estudiantado. Este conlleva una investigación a cargo de la Oficina del Procurador o de la Procuradora de Estudiantes con el propósito de intentar una resolución informal de conflictos y establecer medidas de protección para el estudiante o la estudiante, sin que se entiendan como sanciones contra el querellado. Tampoco conlleva necesariamente accionar los procedimientos disciplinarios, aunque se recomienda el nombramiento de un Oficial Examinador también durante esta etapa. Por otro lado, la Universidad desarrolló un procedimiento formal posterior para la posible imposición de sanciones disciplinarias que incluyen desde una amonestación oral hasta la destitución dependiendo de la gravedad de la infracción. Véanse, Sec. 35.3 del Reglamento General de la Universidad de Puerto Rico, *supra*; Carta Circular 95-06, *supra*, y Certificación Núm. 44, *supra*.

B. *Hostigamiento sexual en el empleo y en las instituciones de enseñanza*

La similitud de los textos de la Ley Núm. 17, *supra*, y la Ley Núm. 3, *supra*, ha suscitado ciertos argumentos entre las partes y los foros que requieren que examinemos

la aplicabilidad de la normativa jurídica en los casos de hostigamiento sexual en el empleo al contexto de las instituciones de enseñanza.

Por un lado, la Universidad alega que existen diferencias significativas entre la Ley Núm. 3, *supra*, y la Ley Núm. 17, *supra*. Indica que el propósito de la primera es proteger a los estudiantes de manera que puedan realizar sus estudios libres de la presión que constituye el hostigamiento sexual. Es por ello que concluye que el lenguaje utilizado para definir la conducta en la modalidad de ambiente hostil es distinto en el marco académico-estudiantil. Además, la Universidad señala que el recurrido incurrió en conductas que la ley identifica como constitutivas de hostigamiento sexual en las instituciones de enseñanza tales como: roce corporal, ataques físicos, demandas implícitas de favores sexuales, miradas lascivas y comentarios impropios. Véase, Exposición de Motivos de la Ley Núm. 3, *supra*.

*A contrario sensu,* el doctor Lorenzo Hernández arguye que el hostigamiento sexual por ambiente hostil proscrito en la Ley Núm. 17, *supra,* es similar al prohibido en la Ley Núm. 3, *supra,* y solamente varían las personas a quienes se protege con una u otra ley. Por lo tanto, concluye que corresponde a los tribunales definir el tipo de conducta prohibida y para ello se pueden servir por analogía de las normas establecidas en el

ambiente de trabajo y las interpretaciones correspondientes.

Como podemos extraer de los Arts. 17 y 18 del Código Civil, 31 L.P.R.A. secs. 17 y 18, así como nos esbozan claramente Elfren Bernier y Cuevas Segarra:

> …las diversas leyes relacionadas entre sí por su objetivo o propósito, no deben ser interpretadas separadamente, sino refiriéndose las unas a las otras como un todo, buscando la intención legislativa. En otras palabras, que deben ser tratadas como un todo armónico, leyéndolas en conjunto y no interpretando aisladamente sus disposiciones. R. Elfren Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las Leyes en Puerto Rico* (Ed.Luiggi Abraham), 2da ed., Puerto Rico, Publicaciones JTS, 1987, pág. 481. Véase *Lucero v. San Juan Star,* 159 D.P.R. 494, 511 (2003).

"Ahora bien, las leyes no se interpretan ni se aplican en un vacío". *Román Cruz v. Díaz Rifas*, 113 D.P.R. 500, 505 (1982). "[U]n determinado caso puede requerir un tratamiento distinto al que se le haya dado a otro, por más que éstos parezcan ser iguales". Íd. Igual situación ocurre cuando existen dos (2) leyes similares, con objetivos muy parecidos, pero que pueden tener interpretaciones distintas. Con estas bases, examinemos las leyes en cuestión.

Comenzamos apuntando que la definición de hostigamiento sexual de la Ley Núm. 3, *supra*, es muy similar a la definición expuesta en la Ley Núm. 17,

*supra*.[15] Sin lugar a dudas, la Asamblea Legislativa consideró ampliamente la Ley Núm. 17, *supra*, al momento de diseñar la legislación sobre hostigamiento sexual aplicable a las instituciones de enseñanza.[16] Ambas leyes son textualmente muy parecidas y sus objetivos coinciden en varios aspectos, entre los que se

_____

[15] El Art. 3, Ley Núm. 17, supra, 29 L.P.R.A. sec. 155b, indica que:

> "El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales de cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:

>> (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición de empleo de una persona

>> (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

>> *(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo".* (Énfasis suplido).

En cuanto al Art. 4 de la Ley 3, *supra*, véase pág. 23 de la Opinión.

[16] Véase, Exposición de Motivos de la Ley 3-1998 ("[L]a Ley Núm. 17 de 2[2] de abril de 1988 [29 L.P.R.A. secs. 155 *et seq*.] que prohíbe el hostigamiento sexual en el empleo, puso de manifiesto la existencia del mismo mal en las instituciones de enseñanza…").

encuentran: proteger a los ciudadanos del discrimen por razón de sexo en la modalidad de hostigamiento sexual, proveerles un remedio a los afectados por hostigamiento sexual, e imponer responsabilidad civil por tales conductas.

No obstante, la Asamblea Legislativa decidió atender en leyes separadas el problema de hostigamiento sexual en el empleo y el hostigamiento sexual en las instituciones de enseñanza. Resaltan de esta forma las diferencias entre los propósitos, las poblaciones que ambas leyes protegen y otras protecciones que ofrecen.

Mientras la Ley Núm. 17, *supra*, prohíbe el hostigamiento sexual en el empleo, la Ley Núm. 3, *supra*, busca prohibir el hostigamiento sexual contra los estudiantes de forma tal que estos tengan un ambiente propicio para su desarrollo y aprendizaje. Art. 1, Ley Núm. 17, *supra* (29 L.P.R.A. sec. 155); Arts. 1 y 2, Ley Núm. 3, *supra* (3 L.P.R.A. secs. 149-149a). Por lo tanto, las leyes en cuestión aplican en contextos muy distintos: el contexto obrero-patronal y el contexto educativo.

En el contexto educativo, la Ley Núm. 3, *supra*, protege a los estudiantes de todas las edades, incluyendo a un sector de estudiantes quienes usualmente son una población de menor edad y de menor madurez mental y física, en comparación a los miembros de la fuerza laboral. Por lo tanto, no podemos esperar que todo

concepto, normativa e interpretación se adapte en el contexto académico. En vista de ello, y a diferencia del contexto obrero patronal, observamos que el estatuto no provee expresamente de un término de prescripción[17] y modifica la definición de hostigamiento sexual para este sector de la población.

Todas las diferencias señaladas justifican el que la interpretación de la Ley Núm. 17, *supra*, y su jurisprudencia, no puedan ser aplicadas de forma automática e irreflexiva en casos de hostigamiento sexual en el contexto de instituciones de enseñanza sin considerar las diferencias entre el contexto de aplicación de cada ley y las personas involucradas. En consecuencia, resolvemos que la normativa aplicable al contexto obrero-patronal es meramente persuasiva y no determinante para la interpretación de la Ley Núm. 3, *supra*. Por estas mismas razones, nuestras conclusiones en el presente caso se limitan al contexto académico.

Aclarado lo anterior, examinemos las disposiciones aplicables de esta legislación.

IV

---

[17] 29 L.P.R.A. sec. 155m. (El término prescriptivo para presentar una causal de acción por hostigamiento sexual en el contexto laboral es de un año desde que terminan las circunstancias que podrían entorpecer el ejercicio de la acción.)

El Art. 4 de la Ley Núm. 3, *supra*, define hostigamiento sexual en las instituciones de enseñanza como:

> …cualquier tipo de conducta o acercamiento sexual explícito o implícito no deseado hacia cualquier estudiante de la institución en que incurra un director, superintendente de escuela, supervisor, agente, estudiante, persona no empleada por la institución, maestro o empleado del personal docente o no docente de la institución.

> Se entenderá por hostigamiento sexual no deseado el requerimiento de favores sexuales y cualquier otra conducta, explícita o implícita, verbal o física de naturaleza sexual hacia el estudiante cuando se da una o más de las siguientes circunstancias:

> (a) Cuando esa conducta o acercamiento - indeseado tiene el efecto o propósito de amedrentar, amenazar al estudiante, interferir de manera irrazonable con el desempeño de los estudios de esa persona o cuando crea un ambiente de estudios intimidante, hostil u ofensivo.

> (b) Cuando el sometimiento o rechazo a dicha conducta o acercamiento indeseado por parte de la persona se convierte en fundamento para la toma de decisiones con respecto a cualquier aspecto relacionado con los estudios de la persona.

> (c) Cuando someterse a dicha conducta o acercamiento indeseado se convierte de forma implícita o explícita en una condición para permanecer en la institución de enseñanza. Art. 4, Ley 3-1998, 3 L.P.R.A. sec. 149c.

A su vez, se considerará la totalidad de las circunstancias en que ocurrieren los hechos para determinar si la alegada conducta o acercamiento indeseado constituye hostigamiento sexual. 3 L.P.R.A. sec. 149d.

Por lo tanto, la ley establece quién es el sujeto protegido, quién es el actor y cuál es la conducta prohibida, es decir, una conducta de naturaleza sexual (explícita o implícita, verbal o física) y no deseada.

Además, de una lectura del precepto citado colegimos que la Ley Núm. 3, *supra*, prohíbe el hostigamiento sexual en las instituciones de enseñanza en dos (2) modalidades: *quid pro quo* y ambiente hostil, intimidante u ofensivo. Por su parte, la primera modalidad se prohíbe mediante los incisos (b) y (c). Estos incisos proscriben el hostigamiento sexual a cambio de algo; puede ser como condición para que el estudiante permanezca en la institución de enseñanza o que el sometimiento o rechazo del hostigamiento sea fundamento para la toma de alguna decisión respecto al estudiante. Por otro lado, el hostigamiento sexual por ambiente hostil, intimidante u ofensivo se prohíbe en el inciso (a) del precepto legal citado.

En el caso de autos, la Universidad alega que la conducta del profesor "interfirió irrazonablemente" con

los estudios del estudiante; creó un ambiente de estudios intimidante, hostil y ofensivo, así como tuvo un efecto amenazante y de amedrentamiento en el estudiante. Por esta razón, enfocaremos nuestro análisis en el inciso (a) del Art. 4.

Cabe señalar que a pesar de que englobemos todo el inciso bajo la modalidad denominada como "ambiente hostil o intimidante", la Asamblea Legislativa ha determinado que este se configura en las instituciones de enseñanza cuando la conducta sexual de una persona[18] tiene el propósito o efecto de **amedrentar, amenazar** al estudiante o **interferir irrazonablemente** con el desempeño en sus estudios o cuando la conducta sexual **convierte el ambiente de estudios en uno intimidante, hostil u ofensivo**. Art. 4, Ley Núm. 3, *supra*. La Asamblea Legislativa recalca además a través de la Exposición de Motivos de la ley que cualquiera de estas circunstancias es suficiente para responsabilizar a la institución académica. Véase, Exposición de Motivos, Ley Núm. 3, *supra*.

Empero, lo que constituye conducta sexual bajo esta modalidad no puede evaluarse exclusivamente en función de la percepción de una de las partes involucradas. Para determinar qué conducta se considerará hostigamiento

---

[18] Esta persona puede ser: un "director, superintendente de escuela, supervisor, agente, estudiante, persona no empleada por la institución, maestro o empleado del personal docente o no docente de la institución". Art. 4, Ley Núm. 3, *supra*.

sexual por ambiente hostil, es necesario analizar *todas* las circunstancias en que ocurrieron los hechos. 3 L.P.R.A. sec. 149d. Por esta razón, el análisis de lo que constituye hostigamiento sexual, incluyendo la modalidad de ambiente hostil, no puede ser uno meramente matemático. Ciertamente no puede ser un estudio en el vacío, abstraído de la realidad, las personas, lugar y tiempo en que ocurren lo sucesos.

Además, para determinar qué conducta constituye hostigamiento sexual y evaluar todas las circunstancias, es necesario, como regla general, realizar un análisis de dos (2) partes: *subjetivo* y *objetivo*.[19]

Por un lado, el análisis subjetivo asegura que la persona afectada por la conducta la estime como una hostil, intimidante u ofensiva. En otras palabras, debe analizarse **si el estudiante** se sintió amenazado; amedrentado; si percibió que el ambiente en la institución de enseñanza se tornó en uno intimidante, hostil, ofensivo, o que interfiriera con su desempeño como consecuencia de la conducta hostigadora. No obstante, dado que la Ley Núm. 3, *supra*, aplica desde nivel elemental somos conscientes de que puede haber estudiantes de tierna edad y madurez a quienes le sea injusto requerirle que haya percibido la conducta como intimidante, hostil u ofensiva. Por esa razón, habrá

---

[19] Hemos adoptado un análisis similar en el contexto obrero patronal. Véase, *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 D.P.R. 643, 651 (1994).

ocasiones en las que el análisis subjetivo sea innecesario. Sin embargo, siempre se deberá analizar la conducta bajo un crisol objetivo.

La finalidad del análisis objetivo es determinar si la conducta puede razonablemente entenderse como que amenazara, amedrentara, interfiriera irrazonablemente con los estudios o le creara al estudiante un ambiente suficientemente hostil, intimidante u ofensivo al examinar la totalidad de las circunstancias de cada caso.

Al hacer un análisis objetivo en casos de hostigamiento sexual en el contexto obrero-patronal, hemos mencionado factores tales como: la naturaleza de la conducta alegada, su frecuencia e intensidad, contexto en el cual ocurre, período de tiempo y su extensión, y la conducta y circunstancias personales del demandante. Véase, en general, *Delgado Zayas v. Hosp. Int. Med. Avanzada*, *supra*; *Rodríguez Meléndez v. Sup. Amigo, Inc.*, *supra*. En los casos obrero-patronales es usual utilizar las guías de hostigamiento sexual emitidas por la Comisión de Igualdad de Oportunidades de Empleo (*Equal Employment Opportunity Commission*). 29 C.F.R. sec. 1604.11. Véase, *Rodríguez Meléndez v. Sup. Amigo, Inc.*, *supra*, págs. 130-131.

De manera similar, el Departamento de Educación Federal ha diseñado las *Guías Revisadas de Hostigamiento Sexual: Hostigamiento de Estudiantes por Empleados de*

*Escuela, otros Estudiantes y Terceros*[20] (en adelante Guías).[21] Estas se diseñaron a raíz del estatuto federal contra el discrimen en las instituciones de enseñanza. Título IX de la Ley Federal de Educación, *supra*. Las Guías constituyen una fuente de gran ayuda al juzgador pues lo ilustran al evaluar diversos factores sobre lo que constituye hostigamiento sexual por ambiente hostil. Estas han sido formuladas y revisadas, con la participación de diversos sectores, incluyendo organizaciones e individuos, para prevenir y evitar el hostigamiento sexual en el contexto académico.[22]

Algunos de los factores incluidos en las Guías que ayudan a realizar el análisis objetivo para evaluar si ocurrió hostigamiento sexual por ambiente hostil son: primero, el grado en que la conducta afectó al estudiante; segundo, el tipo, frecuencia y duración de la conducta; tercero, la identidad y relación entre el

---

[20] Traducción nuestra.

[21] Departamento de Educación de Estados Unidos, Oficina de Derechos Civiles, *Guías Revisadas de Hostigamiento Sexual: Hostigamiento de Estudiantes por Empleados de Escuela, otros Estudiantes y Terceros* (2001), http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf (última visita 10 de enero de 2012).

[22] No obstante, al utilizar las Guías, *supra*, debemos mantener en mente el contexto en el que se crean. Este es el que los estudiantes disfruten de los beneficios, oportunidades y servicios de los programas y actividades educativas que reciben fondos federales libre de discrimen por sexo. Asimismo, debemos considerar las diferencias entre la Ley 3-1998 y el Título IX de la Ley Federal de Educación, *supra*, tales como: las definiciones de hostigamiento sexual, la amplitud del discrimen que prohíben, las diferencias entre los estándares administrativos para acciones correctivas y los estándares de responsabilidad civil impuestos a las instituciones académicas, así como, las razones para tomar o no por analogía conceptos del contexto obrero-patronal. Es en atención a ello que las Guías ilustran al juzgador en cuanto no sean contrarias a nuestro ordenamiento jurídico.

alegado hostigador y el estudiante; cuarto, la cantidad de individuos involucrados; quinto, la edad y sexo del alegado hostigador y de la víctima; sexto, el lugar del incidente, el tamaño de la institución educativa y el entorno en que ocurrieron los hechos; séptimo, otros incidentes en la institución; y octavo, incidentes que sean basados en género, aunque no sea hostigamiento de naturaleza sexual.

Sin embargo, esta mención de factores es *numerus apertus.* Solo luego de realizar un análisis de estos factores y otros pertinentes, caso a caso, es que se puede llegar a una conclusión objetiva a los efectos de si el acercamiento sexual no deseado puede razonablemente considerarse como hostigamiento a los fines de la Ley Núm. 3, *supra*.

V

Procedamos, entonces, a resolver la controversia de autos.

Primeramente, no está en controversia que la Universidad de Puerto Rico es una institución de enseñanza sujeta a los deberes de prevenir, desalentar y evitar conductas constitutivas de hostigamiento sexual contra sus estudiantes y la Ley Núm. 3, *supra*. De igual forma, el doctor Lorenzo Hernández es parte del personal docente de la Universidad y está sujeto a los procedimientos disciplinarios de la institución con todas

sus garantías.  Por otro lado, el señor Cruz Morales es un estudiante protegido por la Ley Núm. 3, *supra*.

El señor Cruz Morales optó -de entre todos los derechos y remedios señalados por la Ley Núm. 3, *supra*- por presentar una Querella ante la institución educativa. El proceso administrativo incoado comenzó con una investigación informal de resolución de conflictos y continuó con un procedimiento formal que culminó con la destitución del recurrido como medida disciplinaria. Esto al determinarse que violó la política institucional sobre el hostigamiento sexual y el Reglamento General de la Universidad de Puerto Rico, *supra*.

Asimismo, no existe controversia de que la conducta probada del doctor Lorenzo Hernández fue una de naturaleza sexual al sobarle las manos, el pecho, respirarle en el cuello y lamerle la oreja al señor Cruz Morales. No obstante, resta decidir si el acercamiento sexual no fue deseado bajo la modalidad de ambiente hostil, intimidante u ofensivo. Esto nos exige hacer un análisis objetivo y subjetivo.

En el caso de autos, el estudiante llamó a su amiga para contarle lo sucedido tras el incidente. Posteriormente, presentó una Querella ante la Procuradora del Estudiante relatando lo sucedido y su sentir. Un análisis subjetivo de estas circunstancias nos lleva a concluir que el acercamiento del recurrido fue un acto de

naturaleza sexual no bienvenido por el estudiante y que este se sintió amenazado y amedrentado por ello.

En cuanto al análisis objetivo, podemos apreciar que la conducta sexual no deseada fue explícita y física. Al considerar el lugar donde ocurrieron los hechos, así como la cantidad de individuos involucrados, observamos que el acercamiento sexual ocurrió en un espacio reducido -una oficina cerrada donde solamente se encontraban el recurrido y el estudiante. Más aun, el recurrido se encontraba en una posición de autoridad pues era catedrático de la Universidad y se encontraba en plena campaña para ser Rector de dicho Recinto. Por lo tanto, luego de examinar la totalidad de las circunstancias desde un punto de vista objetivo, concluimos que, la conducta del doctor Lorenzo Hernández recae en la modalidad de ambiente hostil, intimidante u ofensivo. En otras palabras, no albergamos duda de que la conducta del doctor Lorenzo Hernández al sobarle las manos, el pecho, respirarle en el cuello y lamerle la oreja puede ser percibida como hostigamiento sexual por un estudiante razonable.

Aunque es cierto que el estudiante eventualmente mejoró su promedio académico y no hubo hostigamiento en más de una ocasión, el acercamiento ocurrido es lo suficientemente severo e invasivo que no podemos exigir

una multiplicidad de actos como lo hizo el Tribunal de Apelaciones.

Además, el hecho de que el estudiante mejorara sus notas luego del incidente no cambia nuestra conclusión. El cambio de promedio no es por sí solo concluyente para el análisis objetivo. El deber del Tribunal de Apelaciones era considerar los demás factores y fundamentar su dictamen a base de la totalidad de las circunstancias.

Luego de concluir que el doctor Lorenzo Hernández cometió hostigamiento sexual en violación a la política institucional así como de otras normas de la Universidad, la institución podía proceder a imponer las sanciones aplicables y bajo su discreción, entre ellas, la destitución del recurrido.

VI

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Universidad de Puerto Rico en
Aguadilla

    Peticionaria

       v.

José Lorenzo Hernández

    Recurrido

*Certiorari*

CC-2010-0543


SENTENCIA

En San Juan, Puerto Rico a 27 de marzo de 2012.

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado con opinión escrita. El Juez Presidente señor Hernández Denton está inhibido.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Universidad de Puerto Rico en Aguadilla<br><br>Peticionaria<br><br>v.<br><br>José Lorenzo Hernández<br><br>Recurrido | CC-2010-0543 |

Opinión Concurrente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 27 de marzo de 2012

Estoy de acuerdo con lo resuelto por la mayoría de este Tribunal en cuanto a que el doctor Lorenzo Hernández cometió hostigamiento sexual en violación a la política institucional de la Universidad de Puerto Rico que lo prohíbe. De igual manera, entiendo que la Universidad de Puerto Rico estaba facultada para imponer las sanciones que entendiese pertinentes, entre ellas la destitución de Lorenzo Hernández. Sin embargo, creo necesario abundar sobre algunas de las expresiones hechas por el Tribunal en el día de hoy. Por ser del criterio de que el hostigamiento sexual constituye una grave lesión a la dignidad humana y transgrede principios de primer orden, emito la siguiente Opinión concurrente

I

El doctor José Lorenzo Hernández (recurrido) se desempeñaba como catedrático del Departamento de Ciencias Sociales de la Universidad de Puerto Rico en Aguadilla

(UPRAG). Por otro lado, Félix Cruz Feliciano (estudiante) era estudiante de Ciencias Sociales de la UPRAG. Aunque había tomado cursos con el recurrido, al momento de los hechos no era estudiante de éste pero sí de la profesora Mirza González, quien compartía oficina con el recurrido.

El 13 de octubre de 2006 el estudiante y otros compañeros y compañeras, luego de una presentación en la clase de la profesora González, acudieron a la oficina de ésta para discutir la exposición oral y conocer sus notas. Posteriormente, y luego de atenderlos, la profesora salió de la oficina y el estudiante pasó a saludar al recurrido. En ese momento, el recurrido estaba ocupado atendiendo a otros alumnos por lo cual el estudiante aprovechó para ir al baño y tomar agua. Finalmente, regresó a la oficina del recurrido y se quedó a solas con él. Mientras hablaban de asuntos relacionados a la Universidad, específicamente sobre la candidatura a rector del recurrido, el recurrido le pidió al estudiante que acercara su silla a la pantalla de la computadora, quedando la silla del estudiante y la del recurrido una al lado de la otra. Así las cosas, comenzó a hablarle de la suavidad de sus manos, las comparó con las del estudiante e hizo señalamientos sobre que éstas tenían las venas brotadas. Acto seguido pasó a masajearle las manos y el brazo. Los masajes subieron de intensidad y el profesor obligó al estudiante a que le diera la espalda. Así, comenzó a darle masajes en la espalda y en el cuello. Mientras esto sucedía el recurrido pasó sus manos por debajo de los brazos del estudiante para masajearle el

pecho. De esta manera, el estudiante podía sentir la respiración del recurrido en su cuello. Además, al momento de masajearle el pecho el recurrido le subió la camisa al estudiante y lo haló como para que se recostara. Este último hizo fuerza para no quedar recostado encima de él pero aún así el recurrido le lamió una oreja. En ese momento, el estudiante se despidió y salió de la oficina molesto y ofendido. Asimismo, dijo estar en un estado de *shock* y temer por las repercusiones que pudiese tener su reacción en cuanto a su carrera universitaria.

Una vez fuera de la oficina del recurrido, el estudiante se limpió la oreja y comprobó que ésta estaba mojada. En estado de estupefacción llamó a una amiga para narrarle lo sucedido y, a continuación, se querelló con la Procuradora Estudiantil de la UPRAG, presentado querella escrita y verbal en contra del recurrido. Con la querella se inició un procedimiento informal en contra del recurrido por ser los hechos alegados constitutivos de hostigamiento sexual.

Por su parte, la Procuradora Estudiantil le pidió al recurrido que plasmara su versión de los hechos por escrito a lo cual el recurrido ripostó que dada su candidatura a rector no tenía tiempo para ello y que hiciese lo que tenía que hacer. Dado lo anterior, la Procuradora Estudiantil, refirió un informe de investigación informal a la rectora y recomendó que se iniciara un procedimiento formal. Lo anterior dado que producto de la prueba que evaluó concluyó

que el recurrido había violado la política de hostigamiento sexual vigente al momento de los hechos.

Teniendo en cuenta que los hechos sucedieron en medio de una consulta para llenar el puesto de rector o rectora de la UPRAG, la Rectora interina se inhibió del proceso y refirió el caso al Presidente de la Universidad. Este último, a su vez, refirió el asunto al Rector del Recinto Universitario de Mayagüez (RUM) quien designó a una oficial examinadora para que atendiera el caso. La oficial examinadora recomendó al Rector del RUM formular cargos contra el recurrido dado que de probarse los hechos alegados éstos constituirían una violación al Reglamento General de la Universidad de Puerto Rico y a la Política Institucional sobre Hostigamiento Sexual en la Universidad de Puerto Rico.

Así las cosas, el asesor legal de la UPR se comunicó con el Rector de la UPRAG, toda vez que éste ya ocupaba el cargo en propiedad. Le comunicó que le refería el informe de la oficial examinadora para que, de entenderlo necesario, iniciara un procedimiento disciplinario formal. Acorde a lo anterior el Rector de la UPRAG formuló cargos contra el recurrido por violaciones a las secciones 35.2.8, 35.2.14, 35.2.18 y 35.2.19 del Reglamento General de la UPR y la Carta Circular número 95-06. El oficial examinador recomendó la desestimación de los cargos. Sin embargo, el Rector de la UPRAG decidió no acoger las recomendaciones del oficial examinador y procedió a destituir al recurrido.

Inconforme, el recurrido acudió ante el Presidente de la Universidad quien confirmó la decisión del Rector de la UPRAG. Igualmente, recurrió a la Junta de Síndicos que a su vez también confirmó la destitución. Agotados los canales administrativos, presentó un recurso de revisión ante el Tribunal de Apelaciones. El foro intermedio revocó la determinación de la Junta de Síndicos por entender que ésta actuó de forma arbitraria, irrazonable y contraria a derecho. En desacuerdo, la UPR recurrió a este Tribunal.[23]

Como señala la mayoría, hoy tenemos la oportunidad de examinar la Ley Número 3 de 4 de enero de 1998, *infra*. Dado lo dañino que resulta el hostigamiento sexual en la vida y desempeño de las personas hostigadas entiendo que debemos ser meticulosos a la hora de incorporar factores que ilustren al juzgador de los hechos sobre si un acto o un conjunto de actos constituyen hostigamiento sexual. No debemos perder de perspectiva que muchos factores que aparentan ser neutrales pueden constituir una carga indebida para la persona hostigada. Veamos.

---

[23] La Universidad adujo los siguientes señalamientos de error:

> Erró el Tribunal de Apelaciones al revocar a la Junta de Síndicos de la Universidad resolviendo que a base de los hechos determinados en el caso de autos no se probó la conducta imputada de hostigamiento sexual en una institución de enseñanza conforme a la ley núm. 3 de 4 de enero de 1998.

> Erró el Tribunal de Apelaciones al revocar a la Junta de Síndicos dejando totalmente impune de sanciones disciplinarias al recurrido aun cuando se probó que la conducta imputada violó el reglamento general de la universidad.

II

A

El hostigamiento sexual es un acto de poder que se basa en la erotización de la sumisión del hostigado o la hostigada. *Véase*, Janet Halley, *Sexuality Harassment*, *en Left Legalism / Left Critique*, Wendy Brown & Janet Halley Eds., Duke University Press, Durham & London, 2002. El hostigamiento sexual lesiona la dignidad y deshumaniza a la persona hostigada. Es por ello que debemos ser extremadamente cuidadosos a la hora de delinear sus contornos.

El concepto de hostigamiento sexual (*sexual harassment*) se acuñó por primera vez en los años setenta y se utilizó para denunciar un tipo de discrimen por razón de sexo que sufrían las mujeres en su lugar de empleo. Se piensa que el primer grupo que empleó el término *sexual harassment* fue un grupo de mujeres organizadas bajo el nombre de *Working Women United* (WWU). Vicki Schultz, *Reconceptualizing Sexual Harassment*, 107 Yale L.J. 1683 (1998), nota 4. Sin embargo, las bases teóricas principales para el desarrollo de este concepto las estableció Catharine MacKinnon en *Sexual Harassment of Working Women*, Yale University Press (1979). MacKinnon fue enfática a la hora de establecer que la gravedad del hostigamiento sexual era tal que negaba a las mujeres la posibilidad de estudiar o trabajar; cosa a la que tenían derecho sin tener que soportar ser objeto de avances sexuales indeseados. MacKinnon, *op. cit.*, en la pág. 25.

En 1976 el Tribunal de Distrito de Estados Unidos para el Distrito de Columbia sostuvo que el tomar represalias contra una empleada que rechazó avances sexuales indeseados constituía discrimen por razón de sexo, según los parámetros establecidos en el Título VII de la Ley de Derechos Civiles de 1972, 42 U.S.C.S. sec. 2000e *et seq.*, siendo éste el primer caso donde hubo un pronunciamiento judicial sobre el tema. *Williams v. Saxbe*, 413 U.S. 654 (1976). Posteriormente, el Tribunal Supremo de Estados Unidos atendió el asunto en *Meritor Savings Bank, FSB v. Vinson et al*, 477 U.S. 57 (1986) y sostuvo que el hostigamiento sexual en el ambiente de trabajo era tan lesivo al ambiente laboral como el hostigamiento racial. Específicamente dijo que "a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets". *Id*. en la pág. 67.

Por fundamentos similares, la Asamblea Legislativa de nuestro País, prohibió el hostigamiento sexual en el empleo mediante la Ley Núm. 17 del 22 de abril de 1988, 29 L.P.R.A 155-155m (2009). Allí, se estableció que el hostigamiento sexual atenta contra la dignidad de las personas y constituye una práctica discriminatoria por razón de sexo. Además, se le impuso al patrono el deber de prevenirlo y evitar su comisión. *Véase*, Exposición de Motivos, Ley 17, *ante*.

Dado lo lesivo que resultan los avances sexuales indeseados constitutivos de hostigamiento sexual, diez años más tarde, la Asamblea Legislativa, se aprestó a legislar para prohibir su comisión en el ambiente educativo. Ley Núm. 3 de 4 de enero de 1998, Ley para prohibir el hostigamiento sexual en las instituciones de enseñanza, 3 L.P.R.A. sec. 149-149k (2009) (Ley 3). La pieza reiteró el efecto lesivo del hostigamiento sexual sobre la dignidad humana y el desarrollo del proceso educativo. Además, recalcó el deber que tiene el Estado de garantizar el derecho a la educación de los estudiantes, incluyendo un ambiente libre de hostigamiento sexual. La exposición de motivos de la Ley afirma que "el hostigamiento se manifiesta principalmente en la relación profesor-estudiante y mayormente contra mujeres. …[L]a conducta de hostigamiento es variada, incluyendo hostigamiento de tipo verbal, miradas lascivas, comentarios impropios, roce corporal, presiones e invitaciones con contenido sexual, demandas implícitas de favores sexuales y ataques físicos". Exposición de Motivos, Ley Núm. 3, *ante*.

Así, la Ley 3, establece la responsabilidad civil de las instituciones de enseñanza por aquellas actuaciones constitutivas de hostigamiento sexual, tanto de su personal docente como del no docente, de los estudiantes y de terceros no empleados. Aunque el grado de responsabilidad varía según la relación que tenga la institución de enseñanza con la persona que hostiga sexualmente, ésta

tiene el deber de mantener el ambiente educativo libre de hostigamiento sexual. *Véanse* Arts. 6-8, Ley Núm. 3, *ante*.

Sin embargo, la Universidad de Puerto Rico se adelantó diez años a esta legislación. El 27 de mayo de 1988, mediante la Carta Circular 88-07, estableció su política institucional prohibiendo el hostigamiento sexual. Posteriormente, el 16 de agosto de 1994 se promulgó un procedimiento para atender las querellas relacionada a esta problemática, Carta Circular 95-03. Finalmente, el 12 de septiembre de 1995, se enmendó el procedimiento establecido por esta última y se promulgó el Procedimiento Enmendado para Tomar Acción Informal o Formal sobre Querellas de Hostigamiento Sexual o Discrimen por Razón de Sexo, sustituyendo al promulgado el 16 de agosto de 1994 (Procedimiento Enmendado), Carta Circular 95-06.

El Procedimiento Enmendado estableció la manera en que se sometería, investigaría y tomaría acción formal o informal ante las querellas por hostigamiento sexual. Además, afirmó que el hostigamiento sexual, tanto en el empleo como en el ambiente académico, constituye una práctica ilegal y discriminatoria, la cual está prohibida, independientemente de jerarquía o posición de las personas involucradas. Igualmente, sostuvo que el hostigamiento sexual se configura en dos modalidades, a saber: *quid pro quo*, algo a cambio de algo, o ambiente hostil. *Véase* Carta Circular 95-06, págs. 3-5.

En aras de cumplir con la política institucional la Carta Circular estableció dos procedimientos: el informal y

el formal. El procedimiento informal está destinado a determinar si procede o no la formulación de cargos para imponer sanciones disciplinarias. De determinarse que la formulación de cargos procede entonces se inicia un procedimiento formal. Una vez concluido el mismo, la autoridad nominadora, es decir la Universidad, emite una decisión al respecto.

Es importante notar que el procedimiento establecido no sólo abarca a los empleados docentes y no docentes de la Universidad sino también a los estudiantes. Esto es importante porque las sanciones disciplinarias susceptibles de ser impuestas a quienes violentan la política institucional de hostigamiento sexual no están dirigidas de manera exclusiva a quienes tienen una relación laboral con la institución. Dicho esto pasaremos a interpretar la Ley Núm. 3, *ante*.

B

Como cuestión de umbral debo decir que aunque la Ley 17, *ante*, y la Ley 3, *ante*, proscriben una misma conducta, los ambientes a los cuales aplica cada una son muy diferentes. Es importante expresar que, aunque el hostigamiento sexual es una conducta que lacera la dignidad de las personas independientemente de su sexo, orientación sexual, identidad de género, condición social y edad, hay circunstancias y contextos, como lo es el educativo, donde esta conducta puede resultar doblemente lesiva.

Es por ello que la Ley 3, *ante*, atiende el asunto hostigamiento sexual en las instituciones de enseñanza de

manera separada al hostigamiento sexual en el empleo. En este sentido, su exposición de motivos es clara en cuanto a que el hostigamiento sexual tiene efectos negativos en el proceso de aprendizaje. Expresamente señala que el mismo se configura cuando se tiene el efecto o propósito de amedrentar, amenazar o interferir de alguna forma con el ambiente, los estudios o con la toma de decisiones relacionadas a los estudios o la permanencia de un estudiante en la institución. Además, sostiene que se responsabilizará a la institución educativa por dichas actuaciones. De igual manera, la ley mandata considerar la totalidad de las circunstancias a la hora de imponer responsabilidad a una institución educativa por actos constitutivos de hostigamiento sexual. Ley 3, *ante*, Exposición de Motivos.

Asimismo, el artículo 2 establece que los estudiantes tienen derecho a realizar sus estudios libres de presiones sexuales. Igualmente, el artículo 3 dispone que el hostigamiento sexual en el ambiente educativo puede configurarse en cualquiera de sus modalidades, entiéndase *quid pro quo* o ambiente hostil.

Ahora bien, procede determinar qué constituye hostigamiento sexual por ambiente hostil en las instituciones de enseñanza. En este caso, la Ley 3, *ante*, nos obliga a analizar esta interrogante a la luz de la totalidad de las circunstancias. La mayoría de este Tribunal, acertadamente, propone un análisis dual. Por una parte, nos dice, debemos atender el aspecto subjetivo del

problema, es decir cómo lo percibe el sujeto víctima de la conducta. Por la otra, se tendrá en cuenta la parte objetiva, es decir, si la conducta incurrida constituye hostigamiento sexual independientemente de la opinión individual de la persona hostigada.

Sobre el aspecto objetivo, la Opinión mayoritaria nos invita a utilizar, de manera ilustrativa, las *Guías Revisadas de Hostigamiento Sexual: Hostigamiento de Estudiantes por Empleados de Escuela, otros Estudiantes y Terceros (Guías)*.[24] Las *Guías* son un conjunto de criterios establecidos por el Departamento de Educación federal a la hora de analizar si se ha configurado o no hostigamiento sexual por ambiente hostil bajo el Título VII. Así, la Opinión mayoritaria señala, basándose en las *Guías*, que deben tenerse en cuenta los siguientes factores: 1) el grado en que la conducta afectó al estudiante; 2) el tipo, frecuencia y duración de la conducta; 3) la identidad y la relación entre el alegado hostigador y el estudiante; 4) la cantidad de individuos involucrados; 5) la edad y sexo del alegado hostigador y de la víctima; 6) el lugar del incidente, el tamaño de la institución educativa y el entorno en que ocurrieron los hechos; 7) otros incidentes en la institución; 8) incidentes que sean basados en género, aunque no sea hostigamiento de naturaleza sexual. Opinión mayoritaria, pág. 29 *citando a* las *Guías*, en las págs. 6-7. Agrega que la mención de factores es *numerus*

---

[24] *Disponibles en* http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf (Última visita 6 de marzo de 2012)

*apertus*. Sin embargo, sostiene que en el análisis a realizarse deben considerarse estos factores  y otros pertinentes, caso a caso, para objetivamente saber si el acercamiento sexual no deseado puede, razonablemente, considerarse como hostigamiento sexual. Opinión mayoritaria, pág. 29.30.

Debo decir que en cuanto a la frecuencia y duración, y dado que el ambiente académico es diferente al ambiente laboral, soy del criterio de que no se debe requerir una conducta severa o una multiplicidad de incidentes. De igual manera, el juzgador de los hechos debe considerar que un acto de violencia verbal generalmente antecede a un acto de violencia física. Es por ello que no deben minimizarse incidentes de violencia verbal sólo porque no estén acompañados de un acto de naturaleza física. En relación a esto, un estudio realizado por la American Association of University Women (AAUW) sostiene que "[s]tudents who admitted to sexually harassing other students said that they were most likely to sexually harass other students verbally". *Crossing the Line, Sexual Harassment at School*, en la pág. 14.[25]  De igual forma, "even incidents that appear "minor", such a sexual comments and jokes or being called gay or lesbian, may have profound impact on the emotional well-being of some students". *Id.* en la pág. 8. Más aún, el mismo estudio revela que "[v]erbal and written forms of sexual harassment were most common than physical

---

[25] *Disponible en*
http://www.aauw.org/learn/research/upload/CrossingTheLine.p
df (última visita 6 de marzo de 2012).

harassment". *Id*. en la pág. 20. Del mismo estudio se desprende que el 36% de las estudiantes han sido objeto de comentarios o bromas con contenido de índole sexual, frente a un 3% que han sido intimidadas físicamente. *Id.* en la pág. 21.

Sobre el factor que analiza si la conducta constitutiva de hostigamiento sexual se llevó a cabo en grupo o individualmente, es importante señalar que no porque el acto provenga de un grupo de personas resulta menos lesivo que si se realiza individualmente. En algunas ocasiones, un grupo de personas puede tener un efecto igual o más intimidante sobre la persona hostigada sexualmente. Es por ello que el juzgador de los hechos debe ser sutil a la hora de utilizar, aunque sea ilustrativamente, este factor porque, por ejemplo, un 12% de los estudiantes entrevistados y que fueron hostigados sexualmente, el perpetrador fue un grupo de varones. *Crossing the Line*, *ante*, en la pág. 13. El efecto del hostigamiento sexual, sea en grupo o de persona a persona, siempre tiene un efecto nocivo en la persona hostigada.

Igualmente cuestionable puede ser que se tome en consideración el factor edad y sexo del hostigador y de la persona hostigada. Lo anterior porque el hostigamiento sexual, en cualquiera de sus formas, constituye un ataque a la dignidad independientemente de la edad, del sexo, de la orientación sexual o la orientación de género de la persona hostigada. La controversia ante nuestra consideración

ilustra perfectamente que el hostigamiento sexual trasciende las barreras del sexo y de la edad.

Asimismo, puede resultar problemático que se considere el lugar del incidente, el tamaño de la institución educativa y el entorno en el que ocurrieron los hechos. Estudios demuestran que el hostigamiento sexual no se reduce a un lugar específico del campus o recinto. AAUW, *Drawing the Line: Sexual Harassment on Campus*, en la pág. 15.[26]

Además, cabe destacar que las *Guías* del Departamento de Educación federal, *ante*, que la Opinión mayoritaria nos convida a utilizar de manera ilustrativa, datan del año 2001. Ha pasado más de una década desde su promulgación. Luego de un estudio ponderado de éstas he podido observar que lo razonable es atemperarlas a los tiempos en que vivimos y a la realidad puertorriqueña

Es una realidad que, aunque el hostigamiento sexual es un comportamiento no permitido que trasciende las categorías de sexo, edad, orientación sexual u orientación de género, la mayoría de las personas hostigadas son mujeres. *Véanse*, *Crossing the Line*, *ante*, y *Drawing the Line*, *ante*. Es por ello, y en atención al problema de violencia contra las mujeres que aqueja a nuestro País, que este Tribunal debe ser en extremo cuidadoso a la hora de delinear los contornos de lo que puede -o no- constituir violencia contra éstas.

---

[26] *Disponible en* http://www.aauw.org/learn/research/upload/DTLFinal.pdf (Última visita 6 de marzo de 2012).

Dicho lo anterior, conviene apuntalar que el hostigamiento sexual se presenta, también, entre personas del mismo sexo. En este caso, y considerando que la nuestra es una sociedad patriarcal organizada por roles de género, debe quedar claro que el hostigamiento sexual por ambiente hostil también se configura cuando la razón para el mismo es que la persona hostigada no se comporta según los roles de género asignados culturalmente a su sexo biológico. En este caso, un varón –o una mujer– puede hostigar a otro varón –o a una mujer– simple y llanamente porque el hostigado o la hostigada no se comporta según lo esperado para su sexo, independientemente de su orientación sexual. Lo anterior puede constituir un ambiente igualmente hostil al del caso de autos.

Finalmente, estoy de acuerdo con el análisis dual que establece la mayoría. Sin embargo soy del criterio de que debemos ser diáfanos al establecer el carácter meramente ilustrativo de las *Guías*, *supra*. Dado que el hostigamiento sexual, en su modalidad de ambiente hostil, resulta altamente lesivo al proceso de aprendizaje y que sus consecuencias emocionales y psicológicas pueden influir en la decisión de un estudiante en continuar –o no– sus estudios, es necesario que el juzgador de los hechos sepa que no está limitado por una serie de factores determinados. Entiendo que la experiencia subjetiva es fundamental a la hora de determinar si se configuró el ambiente hostil y que un solo acto verbal puede ocasionar que el ambiente educativo no sea el apropiado para el

proceso de aprendizaje, máxime si la persona hostigadora es un profesor, maestro o alguien que ocupa un puesto de poder en la institución educativa.

En este sentido, entiendo que analizar el lugar donde sucedieron los hechos como también el sexo o edad de la persona hostigada o si los actos se realizaron en grupo o no puede ser ilustrativo. Sin embargo, nada de ello minimiza el grave daño a la dignidad que sufre la persona hostigada.

Al igual que la mayoría de esta Curia pienso que lo adecuado es analizar esta problemática caso a caso, atendiendo la totalidad de las circunstancias. Así, soy del criterio de que debemos alejarnos de establecer criterios que puedan utilizarse por los tribunales inferiores con rigidez.

En este contexto, se vuelve fundamental distinguir que lo que está ante nuestra consideración es determinar qué actos son los configurativos de hostigamiento sexual por ambiente hostil en el ambiente académico. Entiendo que un solo acto, independientemente de que sea verbal o físico, puede crear un ambiente hostil y es responsabilidad de la institución educativa mantener el ambiente libre de hostigamiento sexual. Ahora bien, el determinar si ese único acto es suficiente para la imposición de determinada sanción disciplinaria debe ser atendido por la autoridad nominadora, en el caso de las instituciones públicas, o por la institución educativa, en el caso de las instituciones privadas. Lo anterior es diferente del remedio que pueda

solicitar la persona hostigada sexualmente y que dependerá de que sea estudiante, empleado o persona ajena a la institución.

III

En el caso ante nuestra consideración no hay duda de que las actuaciones del recurrido configuraron hostigamiento sexual en su modalidad de ambiente hostil. El recurrido incurrió en actos de índole sexual al acercarse al estudiante, sobarle las manos, los brazos y acariciarle el pecho. De igual manera, el estudiante, según se desprende del expediente, se afectó emocionalmente a tal punto que hasta los acercamientos y muestras de afecto de su padre le hacen sentir incómodo y nervioso.

En consecuencia, entiendo que la conducta del recurrido configuró hostigamiento sexual en las circunstancias en que ocurrieron los actos. Es decir, mientras estaban a solas en un espacio físico reducido y dominado por una relación de poder como la de profesor (candidato a rector)-estudiante. Sin embargo, soy del criterio de que los mismos actos hubiesen constituido hostigamiento sexual por ambiente hostil aún si se hubiesen configurado en un espacio abierto o público y en una relación par a par.

El hostigamiento sexual es un acto de violencia y debe tratarse como tal. Por lo cual, entiendo razonable que no exijamos que para que se configure hostigamiento sexual en su modalidad de ambiente hostil deban darse determinadas circunstancias. Hacerlo de manera contraria presupondría

perpetuar los esquemas patriarcales que subestiman el efecto de estos actos en la vida y dignidad de las personas.

No podemos olvidar que el hostigamiento sexual en el ambiente académico no sólo se da de profesor-empleado a estudiantes sino también, como bien contempla la Ley 3, *ante*, puede darse de estudiante-estudiante. Además, es importante señalar que se da tanto por la erotización de la sumisión de la persona hostigada como por el placer devenido de la humillación de quien no se comporta de acuerdo a los roles de género asignados a su sexo.

No hay duda que el recurrido incurrió en una violación a la política institucional de la Universidad de Puerto Rico que prohíbe el hostigamiento sexual. Es por ello que le correspondía a la Universidad tomar acción para mantener el ambiente académico libre de hostigamiento sexual y así proveer un ambiente propicio para el desarrollo de proceso educativo. En aras de conseguir lo anterior la Universidad entendió que lo adecuado era destituir al recurrido; dicha acción estaba dentro del margen de su discreción.

IV

Por los fundamentos antes expresados, concurro con la Opinión del Tribunal.

Anabelle Rodríguez Rodríguez
Juez Asociada